**WHITWORTH BROS. STORAGE COMPANY, Plaintiff-Appellant,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., Defendants-Appellees.**

No. 85–3247.

United States Court of Appeals, Sixth Circuit.

Argued March 10, 1986.

Decided June 25, 1986.

Rehearing and Rehearing En Banc Denied Aug. 26, 1986.

Eugine I. Selker, argued, Mark A. Selker, Cleveland, Ohio, for plaintiff-appellant.

Bernard S. Goldfarb, Mark V. Webber, argued, Goldfarb & Reznick, Cleveland, Ohio, for defendants-appellees.

Before: ENGEL, CONTIE and MIL-BURN, Circuit Judges.

CONTIE, Circuit Judge.

Whitworth Brothers Storage Co. (Whitworth) appeals from an order of the district court dismissing Whitworth's complaint filed pursuant to 29 U.S.C. § 1103(c)(2)(A)(ii) against Central States, Southeast and Southwest Areas Pension Fund, its trustees and executive director for lack of subject-matter jurisdiction.[1] For the reasons that follow, the judgment of the district court is reversed.

## I.

On September 15, 1983, Whitworth filed a complaint against Central States alleging that Central States is a multi-employer employee benefit plan covered by ERISA. The complaint alleged that Whitworth was an Ohio corporation, that Central States was headquartered in and had its principal place of business in Illinois, and that since 1955 William and Ernest Whitworth have been employees, co-owners and officers of Whitworth. Count I alleged jurisdiction pursuant to 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331. Whitworth styled the action as one "for recovery of Plaintiff's con-

---

1. Defendants will hereinafter be referred to col-  lectively as "Central States."

tributions to Central States on and after January 1, 1975 ... pursuant to 29 U.S.C. § 1103(c)(2)(A)(ii)," and claimed to have made $11,000 in contributions to Central States on behalf of William and Ernest in the mistaken belief that they were employees covered by the collective bargaining agreement. Payments were made on behalf of William from January 1, 1975 through July 1981 and on behalf of Ernest from January 1, 1975 through March 1980. Whitworth alleged that a request was made on Central States for return of such contributions, and that, on July 23, 1981, such request was denied with respect to payments from January 1, 1975 through November 10, 1979 on behalf of William, but granted with respect to payments from November 11, 1979 through March 1, 1980 on behalf of William. Whitworth alleged that the refusal to refund the payments was "arbitrary and capricious," and violated fiduciary duties pursuant to ERISA and 29 U.S.C. § 1104(a). The complaint was served on the Secretaries of Labor and of the Treasury. In Count II, Whitworth sought restitution pursuant to a state claim for contributions prior to January 1, 1975, alleging that $9,000 was paid on behalf of Ernest and William Whitworth from 1955 through December 31, 1974. Whitworth alleged that demand was made on Central States but that Central States had refused to review the claim for the period 1955 through May 30, 1964, and had denied the request for a refund of contributions made May 31, 1964 through December 31, 1974. Whitworth claimed that Central States' approval of the claim for the period November 11, 1979 through March 1, 1980 estopped Central States from denying Whitworth's claim and that such approval "constitutes a waiver to deny Plaintiff's claim." In Count III, Whitworth, invoking jurisdiction pursuant to 29 U.S.C. § 1132(e)(1), (f), 28 U.S.C. § 1331, sought a declaratory judgment that Ernest Whitworth is not covered by the collective bargaining agreement, that Whitworth is entitled to restitution plus interest of the payments made on Ernest's behalf from 1955 through July 1981, and that Central States is not entitled

to contributions for the period August 1981 through May 1983. On Count I, Whitworth sought a refund of $11,000 plus pre-judgment interest and attorney's fees and costs pursuant to 29 U.S.C. § 1132(g), and on Count II, a refund of $9,000 plus interest and costs.

On November 6, 1984, Central States moved to dismiss for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim. On January 15, 1985, the district court dismissed the complaint for lack of subject-matter jurisdiction. The district court held that employers are not authorized to maintain an ERISA action pursuant to 29 U.S.C. § 1132(a), (e)(1).

> The Sixth Circuit has not specifically ruled on whether an employer may bring an action for recovery of mistaken payments to a pension fund under § 1103(c). The circuit has found that the benefit plan administrator determines whether a mistaken contribution was made and the trustees' action is conclusive unless arbitrary or capricious, not supported by substantial evidence, or erroneous on a question of law. *Transisters [sic] Local 348 Health and Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315 (6th Cir.1984). The Court noted that employers who pay mistaken contributions have no right of action or entitlement to a refund. *Id.* fn. 6.

The district court concluded that ERISA provides employers with no cause of action, and, therefore, dismissed Counts I and III, and dismissed Count II as a pendant claim. An order of dismissal was entered January 22, 1985.

On February 1, 1985, Whitworth moved for reconsideration and to alter or amend the judgment, and for leave to file an amended complaint. On March 11, 1985, the district court denied the motion based on the decision in *Kohn Beverage*, finding that "[t]he Sixth Circuit Court of Appeals did not hold that an employer may now bring an action under ERISA. In fact the Court noted that an employer who mistakenly makes a contribution to a pension fund has no cause of action for recovery."

The district court found that Whitworth attempted to add William and Ernest Whitworth as individual plaintiffs to establish "standing as participants of the fund to file an action under ERISA." The court held that it could not grant the motion for leave until it first vacated the judgment, and concluded that even the amended complaint failed to state a cause of action, and, therefore, the grant of leave would be futile. "There is nothing in ERISA providing a cause of action by an employee to recover mistaken contributions to a plan by his employer."

## II.

The essence of Whitworth's complaint is that Whitworth made contributions to Central States on behalf of its employees pursuant to written contracts, a trust agreement and a collective bargaining agreement, which Whitworth believed obligated it to make such payments. When Central States determined that certain of Whitworth's employees were not entitled to benefits, Whitworth concluded that it had made contributions which it was not contractually obligated to make, and, accordingly, sought restitution of the erroneously paid monies. Accordingly, we consider whether the district court had jurisdiction of such a claim based on (1) the express actions recognized in ERISA; (2) an action implied from the terms of the statute; or (3) an action arising under federal common law.

## A.

■ The pertinent provisions of ERISA are reviewed below. 29 U.S.C. § 1132(e)(1) provides, with respect to jurisdiction, that:

Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Actions available under ERISA are defined in section 502(a), 29 U.S.C. § 1132(a):

A civil action may be brought—

(1) by a *participant* or *beneficiary*—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the *Secretary,* or by a *participant, beneficiary* or *fiduciary* for appropriate relief under section 1109 of this title;

(3) by a *participant, beneficiary, or fiduciary* (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(4) by the *Secretary,* or by a *participant,* or *beneficiary* for appropriate relief in the case of a violation of 1025(c) of this title.

(Emphasis added).[2] It is clear that Whitworth, the plaintiff-employer in this case, is neither a "participant," 29 U.S.C. § 1002(7), "beneficiary," 29 U.S.C. § 1002(8), or "fiduciary," 29 U.S.C. § 1002(21). Accordingly, from the face of the statute it does not appear that Whitworth can premise juris-

---

**2.** 29 U.S.C. § 1132(a)(5), (6) provides for actions by the Secretary of Labor. Subsection (d)(1) provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." Subsection (d)(2) provides that "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." Subsection (e)(2) provides for venue and subsection (g)(1) provides for attorney's fees and costs.

diction on section 502(e), 29 U.S.C. § 1132(e).[3]

However, Whitworth further relies on section 403(c)(1), 29 U.S.C. § 1103(c)(1), which provides:

> Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans), *the assets of a plan shall never inure to the benefit of any employer* and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

(Emphasis added). An exception to this prohibition in subsection (c)(2)(A)(ii) provides:

> In the case of a contribution ... made by an employer to a multiemployer plan by a mistake of fact or law ..., paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.[4]

Whitworth, accordingly, argues that section 1103 provides an employer with an action for return of mistakenly paid contributions.

While courts generally agree that section 502 of ERISA does not provide for a civil action for employers as employers,[5] courts disagree regarding whether the grant of jurisdiction in section 502 is exclusive,

thereby prohibiting an action by an employer such as Whitworth. In overpayment cases, such as the instant case, the Ninth Circuit has held that, despite the specific provisions of section 502, "an employer may bring an action under ERISA to enforce its terms where the employer alleges specific and personal injury." *Award Service, Inc. v. Northern California Retail Clerks Unions & Food Employers Joint Pension Trust Fund,* 763 F.2d 1066, 1068 (9th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986). The court found that the district court had "jurisdiction to entertain the section 403 claim under 29 U.S.C. § 1132(e)" where "the employer alleges that it has mistakenly paid more than $167,000 in contributions which it was not obligated to make." *Id.* (footnote omitted). The court in *Award Service* adhered to an earlier case holding that an employer could sue, pursuant to ERISA, a fund for failure to pay benefits, thereby impairing the employer's relationship with the union. *Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982). In *Fentron,* the court held that the jurisdictional grant of section 502 was not exclusive, and that "Fentron's alleged injuries also fall within the zone of interests that Congress intended to protect when it enacted ERISA." *Id.* at 1305. Further,

> we do not believe that Congress, in enacting ERISA, intended to prohibit employers from suing to enforce its provisions. The omission of employers from 29 U.S.C. § 1132 is not significant in this

---

**3.** In the context of ERISA's unique jurisdictional provisions, the questions of whether the court has jurisdiction and whether a party states a claim are intertwined. Section 502(e)(1) grants jurisdiction over actions brought pursuant to section 502(a). Accordingly, if a party states a claim pursuant to subsection (a), the court has jurisdiction pursuant to subsection (e). The converse also appears to be true. *See Crown Cork & Seal Co. v. Teamsters Pension Fund of Philadelphia,* 549 F.Supp. 307, 309 (E.D.Pa. 1982), *aff'd,* 720 F.2d 661 (3rd Cir.1983).

**4.** This subsection was amended in 1980. The statute, 29 U.S.C. § 1103(c)(2)(A), previously provided:

> In the case of a contribution which is made by an employer by a mistake of fact, para-

graph (1) shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution.

**5.** This court and others have held, however, that an employer may maintain an action under ERISA when the employer falls within the statutory definition of a "fiduciary." *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983); *U.S. Steel Corp. v. Commonwealth of Pennsylvania Human Relations Commission,* 669 F.2d 124, 128 (3rd Cir.1982). We have reached a similar conclusion with respect to a "plan," another party not specifically mentioned in section 502(a). *Saramar Aluminum Co. v. Pension Plan,* 782 F.2d 577, 581 (6th Cir.1986). *But see id.* at 584 (Contie, J., concurring).

regard. There is nothing in the legislative history to suggest either that the list of parties empowered to sue under this section is exclusive or that Congress intentionally omitted employers.... In view of the intent of Congress to protect employer-employee relations, we hold that the statute does not prohibit employers from suing to enforce its provisions. *Id.* (footnotes omitted).

Other courts have reached the opposite conclusion. In *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983), we held that "29 U.S.C. § 1132(e)(1) does not confer jurisdiction over an action brought by an employer as employer administering an employee health benefit program." Also at odds with *Fentron* is the Second Circuit's decision in *Pressroom Unions Printers League Income Security Fund v. Continential Assurance Co.,* 700 F.2d 889, 892 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983), in which the court, rejecting the *Fentron* analysis, declined to construe section 502 as allowing a fund or plan to maintain an action under ERISA. The court observed that "[i]t is beyond dispute that only Congress is empowered to grant and extend the subject matter jurisdiction of the federal judiciary, and that courts are not to infer a grant of jurisdiction absent a clear legislative mandate." *Id.* at 892. We "focus ... on whether there is any indication that the legislature intended to *grant* subject matter jurisdiction over suits by employers, funds, or other parties not listed in § 1132(e)(1)." *Id.* Noting that the legislative history was silent, the court held that, "absent such expression, § 1132(e)(1) should be viewed as an exclusive jurisdictional grant." *Id.* (footnote omitted). The court further noted that it had previously held that "an employer, also not named in ERISA's jurisdictional provisions, may not bring suit under the Act." *Id. See Stone & Webster Engineering Corp. v. Ilsley,*

690 F.2d 323, 326 (2d Cir.1982), *aff'd,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983). The Third Circuit has approved a similar result with respect to actions by an employer to recover excess contributions. "An action brought by an employer *qua* employer such as plaintiff is not included within the scope of this section [502]." *Crown Cork & Seal Co. v. Teamsters Pension Fund of Philadelphia,* 549 F.Supp. 307, 310 n. 3, 311 (E.D.Pa.1982), *aff'd,* 720 F.2d 661 (3d Cir.1983) ("Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) (1976) clearly restricts the categories of individuals empowered to bring a civil action to four groups of persons, none of which includes employers."). *See Hardy v. National Kinney of California, Inc.,* 571 F.Supp. 1214, 1215 (N.D.Cal.1983) (section 502 is exhaustive respecting jurisdiction);[6] *Wong v. Bacon,* 445 F.Supp. 1177, 1183 (N.D.Cal.1977) ("employers who contribute to employee benefit plans do not fit in any of the four limited categories of plaintiffs in § 502(e)(1).").

Courts have likewise resisted employers' attempts to bring actions pursuant to section 502 on grounds other than restitution of allegedly mistaken contributions. The courts have rejected employers' attempts to maintain actions for breach of fiduciary duty under ERISA. *Tuvia Convalescent Center v. National Union,* 717 F.2d 726, 729–30 (2d Cir.1983) (follows *Pressroom,* rejects *Fentron;* "section 1132 does not provide that a civil action may be brought by an employer"); *Modern Woodcrafts, Inc. v. Hawley,* 534 F.Supp. 1000, 1013 (D.Conn.1982) (actions limited to parties enumerated in section 502); *Central States v. Admiral Merchants Motor Freight, Inc.,* 511 F.Supp. 38, 46 (D.Minn.1980), *aff'd,* 642 F.2d 1122 (8th Cir.1981) ("ERISA by its terms permits actions only by the Secretary of Labor and participants, beneficiaries, and fiduciaries of trust funds").[7]

---

**6.** In *Hardy,* the issue of return of excess contributions was raised by an employer's counterclaim responding to an action by trustees against the employer to collect delinquent contributions.

**7.** Courts have often discussed actions by employers under ERISA in terms of standing. *Award Service,* 763 F.2d at 1069; *Associated Builders & Contractors v. Carpenters Vacation & Holiday Trust Fund for Northern California,* 700

*But see Building Service Employees Pension Trust v. Horsemen's Quarter Horse Racing Ass'n,* 98 F.R.D. 458, 461 (N.D.Cal. 1983) (follows *Fentron*). *See also Niagara of Wisconsin Paper Corp. v. Paper Industry Union-Management Pension Fund,* 603 F.Supp. 1420, 1422 (D.Minn.1984); *R.M. Bowler Contract Hauling v. Central States,* 547 F.Supp. 783, 784 (S.D.Ill.1982). The courts have also restricted actions by parties, other than employers, who are also not among the parties enumerated in section 502. With respect to an action by a plan, *see Northeast Department ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 152–54 (3d Cir.1985).[8] *See also Blue Cross & Blue Shield of Kansas City v. Bell,* 596 F.Supp. 1053, 1058 (D.Kan.1984) ("the Tenth Circuit would adopt the position that § 1132 is an exclusive jurisdictional grant and that to sue for equitable relief under ERISA a plaintiff must be a partici-

pant, beneficiary or fiduciary"); *Amalgamated Industrial Union Local 44–A Health & Welfare Fund v. Webb,* 562 F.Supp. 185, 187 (N.D.Ill.1983) (502 is exclusive grant of jurisdiction).

Unfortunately, no legislative history is determinative with respect to whether Congress intended section 502 to be an exclusive grant of jurisdiction. It is clear, however, that when Congress intended to provide a civil action for employers with respect to pension plans it knew how to do so. For instance, 29 U.S.C. § 1451(a)(1) provides:

> A plan fiduciary, *employer,* plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring

F.2d 1269, 1278 (9th Cir.), *cert. denied,* 464 U.S. 825, 104 S.Ct 94, 78 L.Ed.2d 101 (1983); *Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323, 326 (2d Cir.1982), *aff'd,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983); *Gruber v. Hubbard Bert Karle Weber, Inc.,* 608 F.Supp. 392, 394 (W.D.Pa.1985); *Blue Cross & Blue Shield of Kansas City v. Bell,* 596 F.Supp. 1053, 1058 (D.Kan.1984); *Amalgamated Industrial Union Local 44–A Health & Welfare Fund v. Webb,* 562 F.Supp. 185, 187 (N.D.Ill.1983); *Modern Woodcrafts,* 534 F.Supp. at 1012; *Michigan United Food & Commercial Workers Union v. Baerwaldt,* 572 F.Supp. 943, 947 (E.D.Mich.1983), *rev'd on other grounds,* 767 F.2d 308 (6th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986). However, the standing question is certainly analytically distinct from the questions of failure to state a claim and lack of jurisdiction. "The standing doctrine limits the judicial power of the federal courts to parties who demonstrate 'injury in fact.'" *Allstate Insurance Co. v. Wayne County,* 760 F.2d 689, 692 (6th Cir.1985). Pursuant to the standards set out in *Allstate* and the cases cited therein, it appears clear that an employer who mistakenly pays contributions on behalf of employees which he is not contractually obligated to pay is injured in fact by the trust fund's refusal to return the contributions, and, therefore, satisfies the requirements of the standing doctrine.

**8.** In *Michigan United Food & Commercial Workers Union v. Baerwaldt,* 572 F.Supp. 943 (E.D. Mich.1983), a fund sued the state insurance commissioner for a declaratory judgment that a

state statute was preempted. The district court apparently found that jurisdiction existed pursuant to 28 U.S.C. §§ 1331, 1337, but also found that "ERISA gives plaintiffs an independent basis for suit." *Id.* at 946. The court noted that plans or funds are not among the parties enumerated in section 502 and held that

> [w]hile participants, beneficiaries, and fiduciaries who might otherwise not clearly have standing to bring suit in federal court to enjoin violations of the Act are the only parties addressed, I do not believe the provision's language should be read to exclude a non-fiduciary plan itself from suing for an injunction, and obtaining federal jurisdiction by presenting a question arising under ERISA.

*Id.* at 947. The court specifically approved the *Fentron* analysis, *id.* at n. 7, while recognizing that its discussion of jurisdiction was unnecessary in light of the addition of the trustees to the action, giving rise to ERISA jurisdiction under section 502 since the trustees were fiduciaries, *id.* at n. 6. In reversing on the preemption ground, we made no reference to the jurisdictional issue. 767 F.2d 308 (6th Cir.1985). In light of this court's disposition of the case and the acknowledgment by the district court that jurisdiction was proper because of the addition of the trustees as proper parties, the *dicta* in *Baerwaldt* need not be given much deference. Additionally, we have previously indicated that the provisions of section 502 may be limiting. *Authier v. Ginsberg,* 757 F.2d 796, 801 n. 9 (6th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985).

an action for appropriate legal or equitable relief, or both.

(Emphasis added). Congress' failure to specifically mention the term "employer" in section 502 can, therefore, be construed as meaning that Congress intended to exclude employers from the provisions of that section.[9]

The Supreme Court of the United States has considered section 502 of ERISA. In *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), an action by a state entity against a plan, the Court observed that

> [t]he express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties, ... as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes. It did not go so far as to provide that any suit *against* such parties must also be brought in federal court when they themselves did not choose to sue.

*Id.* at 21, 103 S.Ct. at 2852 (footnote omitted). Further,

> [t]he phrasing of § 502(a) is instructive. Section 502(a) specifies which persons— participants, beneficiaries, fiduciaries, or the Secretary of Labor—may bring actions for particular kinds of relief. It neither creates nor expressly denies any cause of action in favor of state governments, to enforce tax levies or for any other purpose. It does not purport to

reach every question relating to plans covered by ERISA.

*Id.* at 25, 103 S.Ct. at 2854 (footnote omitted).[10] The Court concluded that

> ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case. A suit for similar relief by some other party does not "arise under" that provision.

*Id.* at 27, 103 S.Ct. at 2855 (footnote omitted).

Accordingly, the aforementioned authorities and the plain language of the statute make clear that Congress intended to limit the parties who could maintain actions pursuant to section 502, that section 502 is an exclusive grant of jurisdiction, and that ERISA does not expressly provide for an action by an employer against a fund for a refund of contributions. We consider below whether such an action can be implied from section 403 of the statute.

## B.

■ This Circuit and the Supreme Court have often considered the implication of private rights of action.[11] "In evaluating such a claim, our focus must be on the intent of Congress when it enacted the statute in question." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536, 104 S.Ct. 831, 839, 78 L.Ed.2d 645 (1984); *Marx v. Centran Corp.*, 747 F.2d 1536, 1544 (6th

---

**9.** 29 U.S.C. § 1451(a)(1), (c) is inapplicable to this case, and not cited by the parties, since that section only creates an action based on acts or omissions under subtitle E, subchapter III, of the statute. Appellant apparently seeks to proceed under subtitle B of subchapter I. *See Saramar Aluminum Co.*, 782 F.2d at 581 n. 3.

**10.** The Court noted that section 502 is very different from section 301 of the LMRA. While section 502 limits claims and, thereby, jurisdiction, by reference to the particular party, relief sought, and nature of the action, section 301 is much broader. However, the Court noted that even the scope of section 301 is not unlimited. *Id.* at 25 n. 28. Section 301 only requires reference to the contract in question to resolve the

jurisdictional issue. That section grants jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter...." *See Tuvia*, 717 F.2d at 731; *Laborers Health & Welfare Trust Fund v. Kaufman & Broad of Northern California, Inc.*, 707 F.2d 412 (9th Cir.1983); *Teamsters Local 639–Employers Health Trust v. Cassidy Trucking, Inc.*, 646 F.2d 865 (4th Cir. 1981).

**11.** We have jurisdiction, under 28 U.S.C. § 1331, of course, to determine whether an implied right of action exists. *Award Service*, 763 F.2d at 1068.

Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); *Howard v. Pierce,* 738 F.2d 722, 724 (6th Cir.1984).

> That intent may in turn be discerned by examining a number of factors, including the legislative history and purposes of the statute, the identity of the class for whose particular benefit the statute was passed, the existence of express statutory remedies adequate to serve the legislative purpose, and the traditional role of the states in affording the relief claimed.

*Daily Income Fund,* 464 U.S. at 536, 104 S.Ct. at 839. These "factors" have more traditionally been reviewed by the standards set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

> 1) Whether the plaintiff is a member of a class for whose especial benefit the statute was enacted?
> 2) Whether the legislative intent was to create or deny a remedy?
> 3) Whether it is consistent with the purposes of the legislative scheme to imply a remedy?
> 4) Whether the action is one traditionally relegated to state law?

Although these standards are only guides to discern legislative intent, *Marx,* 747 F.2d at 1544, our analysis proceeds along these lines, *Massachusetts Mutual Life Insurance Co. v. Russell,* —— U.S. ——, 105 S.Ct. 3085, 3092–94, 87 L.Ed.2d 96 (1985). "The starting point of the analysis is always the language of the statute," *Marx,* 747 F.2d at 1544, "particularly ... the provisions made therein for enforcement and relief. Then we review the legislative history and other traditional aids of statutory interpretation to determine congressional intent." *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981).

While the question of whether a statute benefits a particular class might appear simplistic, the Court has required more than mere benefit to satisfy the first prong of the *Cort* test. *See Daily Income Fund,* 464 U.S. at 541, 104 S.Ct at 841. *Universities Research Ass'n v. Coutu,* 450 U.S. 754, 759, 771, 101 S.Ct. 1451, 1455, 1461, 67 L.Ed.2d 662 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 24, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).[12] "[A] court must conclude not only that there is a specific class of beneficiaries, but also, that 'Congress intended to confer federal rights upon these beneficiaries.'" *Howard,* 738 F.2d at 724 (quoting *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981)).

> The question whether a plaintiff is an intended beneficiary of a statute and the question whether a statute creates enforceable federal rights are related. Invariably, if a statute is found to establish a federal right in favor of the plaintiff, the plaintiff will be an "intended beneficiary" of the statute. However, the converse is not true necessarily.

*Id.* at 725. "[T]he inference that Congress intended to create legally enforceable rights is strongest when the statutory language focuses unmistakably on a specific and identifiable class of beneficiaries." *Id.* at 726. "Accordingly, an implied cause of action may be found when language in the pertinent statute expresses an 'unmistakable focus on the benefited class' of which plaintiff is a member." *Id. See Cort,* 422 U.S. at 82, 95 S.Ct. at 2089 ("clearly articulated federal right" or "pervasive legislative scheme governing the relationship between the plaintiff class and the defendant class" is required.). The Court has emphasized attention to the directness of the statutory language in question, *Marx,* 747 F.2d at 1545, where such "right-or duty-creating language" is explicit, *Cannon,* 441 U.S. at 690 n. 13, 99 S.Ct. at 1954 n. 13. Consistently, "the Court has been especially reluctant to imply causes of actions under statutes that create duties on the part of per-

**12.** The Court has emphasized that the mere "fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of the person." *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

sons for the benefit of the public at large." *Id.* at 692, 99 S.Ct. at 1955. If the statute grants a class certain rights, then a plaintiff need not necessarily proffer the legislative intent to create a cause of action. *Cort*, 422 U.S. at 82, 95 S.Ct. at 2090. However, where the legislative history evinces an intent to deny such cause of action, that intent is controlling. *Id.* Where the first *Cort* factor has not been satisfied, "the absence in the legislative history of an expressed intent to create a cause of action will be taken as an affirmative indication that none was, in fact, intended." *Marx*, 747 F.2d at 1546.

Further, when the statute specifically provides certain remedies the courts should not expand the statute to encompass other remedies. *Cort*, 422 U.S. at 82 n. 14, 95 S.Ct. at 2090 n. 14. *Marx*, 747 F.2d at 1545. However, when the proposed remedy is "necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute." *Cannon*, 441 U.S. at 703, 99 S.Ct. at 1961 (footnote omitted).

The Ninth Circuit, while recognizing that "[s]ection 403 confers no such right expressly; it merely *permits* the return of contributions mistakenly paid," has held that section 403 of ERISA creates an implied right of action in favor of an employer. *Award Service*, 763 F.2d at 1068. First, the court concluded that the 1980 amendments to section 403 were "clearly designed for the benefit of employers." *Id.* With respect to the other *Cort* factors, the court found:

> Second, a congressional intent to create a private remedy in favor of the employer is implicit in Section 403(c)(2)(A)(ii). Without such a remedy, the decision to return contributions mistakenly paid would be left solely to the interested

trustee. Third, implying a private right of action furthers the congressional scheme of permitting restitution of contributions paid by mistake when equitable factors militate in favor of such restitution. Finally, no principle of federal-state comity renders a federal cause of action inappropriate; Congress preempted all state law regarding employee pension benefits effective with contributions made after January 1, 1975.

*Id.* With respect to the nature of this implied right of action, the court held that the employer "will have to establish that the equities favor restitution" and that "[a] principal equitable consideration is whether restitution would undermine the financial stability of the plan." *Id.* at 1069; *Chase v. Trustees of Western Conference of Teamsters Pension Trust Fund*, 753 F.2d 744, 753 (9th Cir.1985).[13]

Another court has reached the opposite conclusion. *Crown, Cork & Seal*, 549 F.Supp. at 311. The court reasoned:

> In this case, there is no evidence of Congressional intent to create a cause of action for restitution in favor of employers. Employers were not the group for whose special benefit the statutory scheme was enacted. The statute specifically enumerates other private causes of action yet conspicuously does not list employers within the group of persons entitled to maintain a cause of action. ERISA and the 1980 MEPPA amendments were designed specifically to provide pension benefits for long-time employees and their beneficiaries. No Congressional intent can be discerned to benefit employers as a category.
>
> The legislative history of section 403(c)(2)(A)(ii), 29 U.S.C. § 1103(c)(2)(A)(ii) (Supp. IV 1980) does

---

**13.** *Chase* involved owner-operators of taxi-cabs. The court apparently avoided any difficult jurisdictional question pursuant to section 502(e) by concluding that the owner-operators were likely to be "participants," and, therefore, within the jurisdictional grant of section 502(e). *Id.* at 748–49. With respect to section 403, the court held that "[l]egitimate concerns about the stability of the trust fund can be resolved by only allowing restitution when the refund would not affect the fund's stability." *Id.* at 750. Further, the court did not indicate that any special deference be given the administrator's determination. *Id.* at 752.

not indicate that the expansion of the circumstances under which excess contributions could be returned to employers was intended to create a right to such contributions. The language of the statute itself is entirely permissive. It states merely that fiduciaries are not prohibited from returning to an employer contributions made by mistake of fact or law. Congress apparently chose not to use the word "may," a word which might suggest, arguably, a direction to the trustees to take affirmative steps to determine and return mistakenly made contributions, or direction to the Secretary of Labor to promulgate implementing regulations. However, the use of the phrase, "are not prohibited" expresses an intent to allow, but not require the trustees to return contributions if they choose to do so, as an exception to their strict fiduciary duties to maintain the funds for the benefit of employees.

On its face then, the statute imposes no requirement on the trustees to return mistaken contributions. To impose such a requirement by implication would violate the underlying statutory scheme. ERISA's primary purpose is to protect the integrity of the pension funds for the benefit of employees and their beneficiaries. To that end, fund fiduciaries are

strictly required to discharge their duties solely in the interest of the participants and beneficiaries. 29 U.S.C. § 1104. To impose a right to restitution in favor of employers could severely undermine the funds' integrity. Mistaken contributions, once invested, may be just as essential to the funds' integrity and stability as non-mistaken contributions. The statutory language itself recognizes this by allowing and not requiring a fiduciary to disgorge the funds. ERISA surely did not intend to impose the risk of mistaken contributions on the funds, particularly since the employer is in the best position to monitor the amount of its own contributions.

*Id.* at 311–12. *See Hardy v. National Kinney of California, Inc.,* 565 F.Supp. 1027, 1030 (N.D.Cal.), 571 F.Supp. 1214, 1215 (N.D.Cal.1983).[14]

In *Teamsters Local 348 Health & Welfare Fund v. Kohn Beverage Co.,* 749 F.2d 315 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2024, 84 L.Ed.2d 305 (1985), an action premised on 29 U.S.C. § 185(a), we held that "[e]mployers who pay mistaken contributions have no right of action or entitlement to a refund." *Id.* at 321 n. 6. *Kohn* was premised on section 301 of the LMRA, and we did not address the issue of

---

**14.** The Tenth Circuit has apparently allowed an action by an employer in an overpayment case, although the basis of such action is unclear. *Peckham v. Board of Trustees of International Brotherhood of Painters & Allied Trades Union & Industry National Pension Fund,* 719 F.2d 1063, *modified,* 724 F.2d 100 (10th Cir.1983). In *Central States v. Wholesale Produce Supply,* 478 F.Supp. 884 (D.Minn.), *aff'd,* 611 F.2d 694 (8th Cir.1979), in an action by trustees against an employer, the court allowed set-off by the employer of funds paid due to a clerical error. *See also Teamsters Pension Trust Fund v. Philadelphia Fruit Exchange,* 603 F.Supp. 877, 880–81 (E.D.Pa.1985) (no right to set-off as a matter of law); *Niagara of Wisconsin Paper Corp. v. Paper Industry Union-Management Pension Fund,* 603 F.Supp. 1420, 1422 (D.Minn.1984) (no implied right of action); *R.V. Cloud Co. v. Western Conference of Teamsters Pension Trust Fund,* 566 F.Supp. 1426, 1431 (N.D.Cal.1983) ("it is doubtful that this section creates a private right of action;" "even if it does, the section does not

create an entitlement of any kind; it is permissive only, and a refund may be granted or denied for equitable reasons"); *I.C. Ethridge v. Masonry Contractors, Inc.,* 536 F.Supp. 365, 368 (N.D.Ga.1982) (decision of administrator not relevant; "an employer is entitled to the return of an overpayment where, within six months of its discovery, it demands the return of the overpayment"); *E.M. Trucks, Inc. v. Central States,* 517 F.Supp. 1122, 1124–25 (D.Minn.1981) (while statute is permissive, administrator should not have complete discretion, but rather "payments must be refunded if equity so requires," which is a factual question); *Service Employees International Union Local 82 Labor-Management Trust Fund v. Baucom Janitorial Service, Inc.,* 504 F.Supp. 197, 198 (D.D.C.1980) (employer entitled to offset); *Wong v. Bacon,* 445 F.Supp. at 1186 n. 12 ("a court cannot infer a private cause of action from a statute which specifically enumerates other private causes of action in the absence of clear evidence of legislative intent").

the existence of an implied right of action under section 403 of ERISA.[15]

The Supreme Court has recently considered implied rights of action under another provision of ERISA. In *Massachusetts Mutual Life Insurance Co. v. Russell,* —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), a beneficiary brought an action against the plan for improper refusal to pay benefits seeking extra-contractual damages pursuant to section 409(a) of ERISA, 29 U.S.C. § 1109(a).[16] The Court found, under *Cort v. Ash,* that the beneficiary was a party intended to be benefited by the Act and that state law did not bar the implied action due to ERISA's preemptive effect. *Id.* at 3092. The Court found, however, that Congress did not intend to authorize remedies other than those specifically listed in section 502. "We are reluctant to 'fine-tune' an enforcement scheme crafted with such evident care as the one in ERISA." *Id.* at 3093. Further,

> [t]he six carefully-integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute."

*Id.*[17]

The legislative history of section 403, prior to the 1980 amendment, provided:

> Since the assets of the employee benefit plan are to be held for the exclusive benefit of participants and beneficiaries, plan assets generally are not to inure to the benefit of the employer. However, the conference substitute allows an employer's contributions to be returned to him in certain limited situations.
>
> An employer's contributions can be returned within one year after they are made to the plan, if made as a mistake of fact. (For example, an employer may have made an arithmetical error in calculating the amounts that were to be contributed to the plan.) Also, if an employer contributes to a plan on the condition that the plan is tax-qualified or on the condition that a current tax deduction is allowed for the contribution, and it is later determined that the plan is not qualified (or the deduction is not allowed), the contribution can be returned if the plan provides for it. In this case, the contribution can be returned within one year after the disallowance of qualification or deduction.

H.R. Conf.Rep. No. 93–1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5083.

---

15. We held that the trustee's decision is conclusive unless arbitrary or capricious, not supported by substantial evidence, or erroneous on a question of law. *Id.* at 321. This limited review is proper since a trustee who returns contributions may, as a result, face an action for breach of fiduciary duty. *Justice v. Bankers Trust Co.,* 607 F.Supp. 527, 532 (N.D.Ala.1985). *See also Electricians Health, Welfare & Pension Plans v. Gulino,* 594 F.Supp. 1265, 1271–72 n. 15 (M.D.La.1984).

16. Section 409(a) provides in pertinent part:
Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use

of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

17. After *Russell,* the Ninth Circuit panel in *Award Service* published another opinion finding that *Russell* did not dictate a different result in that case. "There was no complex and interrelated system of express remedies in ERISA that related to such a claim. There was a positive indication by Congress that mistakenly paid contributions *could* be returned to the contributor." 774 F.2d 1391, 1392 (9th Cir.1985). Further, "[t]hat remedy [section 403] was clearly enacted for the benefit of employers who mistakenly made payments to a fund, but there existed no express remedy to effectuate that congressional purpose." *Id.* at 1392.

With respect to the *Cort* factors, it appears clear that the statute was passed to benefit employees, not employers, despite the specific provision of section 403(c)(2)(A)(ii). It was the primary intent of Congress that employers not benefit from the assets of a plan. That an employer might benefit from that subsection does not establish a federal right and to so hold would ignore the thrust of ERISA and its purposes. Second, there is no indication of legislative intent to create a remedy other than that specifically set out in section 403. The administrator may return a contribution if the administrator finds that a mistake was made. Further intervention on the part of the courts may implicate meddling in the administrator's exercise of his fiduciary duties. Third, in light of section 502, it would be inconsistent with ERISA to imply a right of action. Fourth, the fact that regulating pension plans is an area of peculiarly federal concern, does not require implication of a private right of action in favor of an employer. "Where the first three *Cort* factors indicate that no cause of action was intended, the mere fact that this legislation is in an area not traditionally relegated to state law cannot change this result." *Marx*, 747 F.2d at 1550.

Accordingly, Whitworth has no implied right of action pursuant to Section 403.

### C.

■ Whitworth also asserts that the district court had jurisdiction of this case under 28 U.S.C. § 1331 because Whitworth's contract claim for restitution is governed by federal common law.[18] This argument is premised on the assertion that the contract between the parties, the pension plan and incorporated provisions of the collective bargaining agreement, and the rights and remedies implicit therein or necessary to the enforcement thereof, are governed

by federal law. Because ERISA's preemption provision and legislative history mandate application of federal law to Whitworth's contract, Whitworth's claims arise under federal law pursuant to 28 U.S.C. § 1331.

29 U.S.C. § 1144(a) provides in pertinent part:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws *insofar as they may now or hereafter relate to any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

(Emphasis added). The purpose of this broad preemption provision is "to provide for a uniform source of law." H.R.Rep. No. 93–533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4655. In considering the preemption issue, the key question remains Congress' intent in enacting the statute. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2898, 77 L.Ed.2d 490 (1983). In *Shaw*, the Court held that the phrase "relates to" is to be construed in the broadest sense. *Id.* at 98, 103 S.Ct. at 2900. "A law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Id.* at 96–97, 103 S.Ct. at 2899–2900 (footnote omitted). The Court noted that the original preemption provision in the statute was narrow and was broadened to cover more than "state laws relating to the specific subjects covered by ERISA." *Id.* at 98, 103 S.Ct. at 2900. However, some state laws "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21.[19]

---

18. Jurisdiction over Whitworth's declaratory judgment action is not established by the fact that such action is premised on interpretation of a federal defense, 29 U.S.C. § 1103(c)(2)(A), to Whitworth's action. *Franchise Tax Board*, 463 U.S. at 14, 103 S.Ct. at 2848.

19. Likewise, in the context of section 301 of the LMRA, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S.

While the Supreme Court has distinguished the preemption issue in ERISA and LMRA cases,[20] preemption under section 301 of the LMRA is instructive in examining ERISA. The Court has held that

the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.... [I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.

*Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 23–24, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983) (footnote omitted). In *Allis-Chalmers v. Lueck*, ── U.S. ──, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Court held that section 301 preempted a state claim for bad faith handling of an insurance claim by the plaintiff's employer and insurer. State law contract claims are preempted "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Id.* at 1916. The Court focused on whether state law "confers non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state law] claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 1912.

In this case, Whitworth's claim is that both plaintiff and defendant Central States are parties to, and are bound by the terms of, the trust agreement and the provisions of the collective bargaining agreement incorporated therein. Whitworth claims to have made payments to Central States in excess of Whitworth's contractual obligations, and claims that, in light of those specifically delineated obligations, equity requires the refund of overpayments. Consideration of this claim inevitably requires interpretation of the documents executed by the parties and the provisions made therein for payment and refund of contributions. It is uncontested that the benefit plan in question is covered by ERISA, and it is likewise clear that Whitworth's claim "relates to" such plan. Accordingly, it is clear that federal, and not state, law applies to Whitworth's claim based on the contracts between the parties. This conclusion is buttressed by judicial interpretation of the legislative history and ERISA's preemption provision.

We have held that ERISA's preemption provision in light of the legislative history[21] and purpose "was intended to create a body of federal substantive law regulating pension plans," *Authier*, 757 F.2d at 799 n. 5, to make "enforcement of ERISA solely a federal concern," *id.* at 801, and "to establish a uniform federal law regulating pension plans," *id.* at 802; *Franchise Tax Board*, 463 U.S. at 20–26.[22] "The legislative history demonstrates that Congress intended federal courts to develop federal

---

20. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985).

21. *See* H.R. Conf. Rep. No. 93–1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 5107 ("All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947"); S.Rep. No. 93–127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 4865.

22. The Court in *Franchise Tax Board* noted that an action pursuant to section 502(a)(3) "is exclusively governed by federal law," *id.* at 20, 103 S.Ct. at 2851 (footnote omitted), that " 'a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans,' " *id.* at 24 n. 26, 103 S.Ct. at 2854 n. 26 and referred to "the class of questions for which Congress intended that federal courts create federal common law," *id.* at 26, 103 S.Ct. at 2855 (footnote omitted).

---

202, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206. (1985).

common law in fashioning" relief under ERISA. *Massachusetts Mutual Life Insurance Co. v. Russell,* 105 S.Ct. 3085, 3097 (1985) (Brennan, J., concurring); *Saramar,* 782 F.2d at 584 (Contie, J., concurring); *Amato v. Western Union International, Inc.,* 773 F.2d 1402, 1419 (2d Cir. 1985) *cert. dismissed,* — U.S. ——, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986); *Kohn Beverage,* 749 F.2d at 319 n. 5; *Thornton v. Evans,* 692 F.2d 1064, 1079 (7th Cir. 1982); *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 972–73 (5th Cir. 1981) ("The legislative history of ERISA indicates that this section was intended to create a federal common law concerning pension rights, which would augment the rights created by ERISA's substantive provisions."); *Murphy v. Heppenstall Co.,* 635 F.2d 233, 237 (3d Cir.1980), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982) ("In enacting ERISA, Congress authorized the evolution of a federal common law of pension plans."); *Hayden v. Texas-U.S. Chemical Co.,* 557 F.Supp. 382, 385 (E.D.Tex.1983); *Corley v. Hecht Co.,* 530 F.Supp. 1155, 1163 (D.D.C.1982); *Gilliam v. Edwards,* 492 F.Supp. 1255, 1261 (D.N.J. 1980); *M & R Investment Co. v. Fitzsimmons,* 484 F.Supp. 1041, 1056 (D.Nev.1980), *aff'd,* 685 F.2d 283 (9th Cir.1982); *Wong v. Bacon,* 445 F.Supp. 1177, 1185 (N.D.Cal. 1977) ("This federal law may supersede state law to the extent state law authorizes restitution from employee benefit plans under all circumstances. Section 502(a)(2) gave the federal courts a role to play in the development of this federal law of restitution from ERISA trusts."); *In re C.D. Moyer Co. Trust Fund,* 441 F.Supp. 1128, 1131 (E.D.Pa.1977), *aff'd,* 582 F.2d 1273 (3d Cir.1978). "The source of this law must be the policies underlying ERISA." *In re C.D. Moyer Co. Trust Fund,* 441 F.Supp. at 1131.

This directive to fashion a federal common law governing pension plans is analogous to the directive with respect to collective bargaining agreements embodied in 29 U.S.C. § 185.

[ERISA, like] [t]he Labor Management Relations Act [,] expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem.... Federal interpretation of the federal law will govern, not state law.... But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy.... Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights.

*Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, (1957). *See also Allis-Chalmers,* 105 S.Ct. at 1911.

Other courts have recognized that the preemption of state law by ERISA and the congressional directive to develop a federal common law of employee benefit plans require application of federal law to actions premised on the contractual obligations created by ERISA plans. *See Northeast Department ILGWU,* 764 F.2d at 154–59; *Teamsters Local 639–Employees Health Trust v. Cassidy Trucking, Inc.,* 646 F.2d 865, 868 (4th Cir.1981) (action for restitution); *Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund,* 618 F.Supp. 943 (D.Del.1985);[23] *Teamsters*

---

**23.** In *Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund,* 618 F.Supp. 943 (D.Del.1985), an employer brought an action to recover contributions mistakenly paid to the fund pursuant to 29 U.S.C. § 185, § 1103, and Delaware law. The court found that no action pursuant to § 185 was stated since the contract did not refer to mistaken payments, *id.* at 946, that § 502 of ERISA is an exclusive grant of jurisdiction, and that no implied right of action is available pursuant to 29 U.S.C. § 1103, *id.* at 947–48. The court held however that plaintiff was not precluded from recovering "because plaintiff does have a right of action under the

*Pension Trust Fund v. Philadelphia Fruit Exchange*, 603 F.Supp. 877 (E.D.Pa. 1985); *E.M. Trucks, Inc. v. Central States, Southeast & Southwest Areas Pension Plan*, 517 F.Supp. 1122 (D.Minn.1981). *See also Peckham v. Board of Trustees*, 719 F.2d 1063, *modified*, 724 F.2d 100 (10th Cir.1983); *Wong*, 445 F.Supp. at 1186 n. 12. *But see Amato*, 773 F.2d at 1419; *Crown Cork & Seal*, 549 F.Supp. at 312 n. 6. We join these courts in recognizing that contract claims like Whitworth's are governed by federal law.[24]

It is clear that Whitworth's claim, governed by federal common law, arises under federal law for the purposes of 28 U.S.C. § 1331. In *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), the Court squarely held that "§ 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin." *Id.* at 100, 92 S.Ct. at 1391. Thus, since Whitworth's action for restitution is governed by federal common law, it "arises under" federal law for purposes of § 1331. Accordingly, the district court erred in concluding that it had no jurisdiction over the case. *See Northeast Department ILGWU*, 764 F.2d at 154–59.[25]

Accordingly, the judgment of the district court is REVERSED and the case is RE-

MANDED for proceedings consistent with this opinion.

---

federal common law for unjust enrichment." *Id.* at 950 (footnote omitted). Expressed differently, courts are authorized to create federal common law governing an employer's right of restitution when the provisions of ERISA preempt the state law of restitution. "Congress' intent in enacting ERISA and MPPAA was to preempt state law and authorize the federal court to fill in the interstices of the statutes. An action for unjust enrichment, equitable in nature, and developed in light of the policies of ERISA is appropriate." *Id.* at 951.

24. 29 U.S.C. §§ 1103, 1132 express Congress' intent not to favor employers and other parties not named in the statute with a federal statutory cause of action. However, the specific language of the statute, section 403(c)(2)(A)(ii), evinces congressional intent not to completely preclude employer recovery of mistakenly paid contributions. Whitworth's claim is, of course, expressly limited by the terms of ERISA set out in section 403(c)(2)(A) and by the terms of the agreement between the parties. Further, we

adhere to the standards set out in *Kohn Beverage* which limit our review of the Fund administrator's denial of a refund of contributions. While such limitations on the return of mistaken payments may seem at times inequitable, Congress, in weighing the interests implicated in the context of employee benefit plans, has favored the financial soundness of the plan and held employers to high standards of accounting.

25. It appears clear, pursuant to the standards set out in *Crews v. Central States*, 788 F.2d 332 (6th Cir.1986) and *Kohn Beverage*, that Whitworth has stated a claim for restitution sufficient to withstand a motion pursuant to Fed.R. Civ.P. 12(b)(6). Whitworth has alleged that (1) Whitworth paid contributions to defendant Central States which Whitworth was not obligated to pay pursuant to the collective bargaining agreement and trust agreement entered into by the parties; (2) Whitworth requested refund of the contributions; (3) Central States denied the refund; and (4) such refusal by Central States was arbitrary and capricious.