Salvatore I. BUSACCA, Plaintiff

v.

EXCAVATING, BUILDING MATERIAL AND CONSTRUCTION DRIVERS UNION LOCAL 436 WELFARE FUND BOARD OF TRUSTEES, Defendants.

No. 1:95 CV 1690.

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 13, 1996.

Frank Consolo, Cleveland, Ohio, for plaintiff.

David A. Jesse, John M. Masters, Martha M. Young, and Joseph M. D'Angelo, Cleveland, Ohio, for defendants.

### MEMORANDUM OF OPINION
### AND ORDER

NUGENT, District Judge.

This matter comes before the Court on the Motions of Defendants to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) (Document # 12) and For Summary Judgment pursuant to Fed.R.Civ. 56 (Document # 13). For the reasons stated below, Defen-

dants' Motion to Dismiss (Document # 12) is DENIED and Defendants' Motion for Summary Judgment (Document # 13) is GRANTED.

## PROCEDURAL HISTORY

Plaintiff, Salvatore I. Busacca, filed his Complaint on August 2, 1995, against Defendants Excavating, Building Material & Construction Drivers Union Local 436 Welfare Fund Board of Trustees ("Board of Trustees") seeking indemnity for legal expenses and an Order declaring that the Employee Retirement Income Security Act of 1974 ("ERISA") does not prohibit a Taft–Hartley employee benefit plan from indemnifying its employees. Defendants filed a Motion to Dismiss on the grounds that there is no actual controversy between the parties; Plaintiff lacks standing to bring this action under 29 U.S.C. § 1132; and the Court lacks subject matter jurisdiction over the entire Complaint. At the same time Defendants filed a Motion for Summary Judgment on the ground that no genuine issues of material fact exist, and the Board of Trustees is entitled to judgment as a matter of law. Plaintiff filed a Memorandum in Opposition to Defendants' Motion to Dismiss and/or for Summary Judgment. Defendants filed a Reply Brief and Plaintiff requested and received leave to file a Sur–Reply Brief in Opposition. Status conferences were held on June 3, 1996, July 30, 1996 and November 27, 1996, at which counsel for all parties were present and the pending dispositive motions were discussed. Both parties filed trial briefs and submitted a Joint Stipulation of Facts.

## STATEMENT OF FACTS

The parties have stipulated the following facts:

Plaintiff is a former office employee of The Excavating, Building Material and Construction Drivers Union Local 436 Welfare Fund ("the Fund"), including the period of June, 1987 through August, 1987.[1] The Fund is a Taft–Hartley Employee Benefit Fund, organized pursuant to ERISA, 29 U.S.C. § 1002(2) and the laws of the State of Ohio.

The Fund was established through collective bargaining by certain employer associations and Local 436 of the International Brotherhood of Teamsters, Excavating, Building Material, Construction Drivers, Race Track Employees, Manufacturing, Processing, Assembling and Installers ("Local 436"). The Fund is governed by a nine member Board of Trustees, consisting of both Union and Management appointed Trustees. The Administration of the Fund is governed in part by an Amended, Restated and Codified Trust Agreement and By–Laws dated May 31, 1987 ("Trust Agreement"). The Board of Trustees exercises management and control over all the assets of the Fund and its administration.

During the period between June, 1987 and August, 1987 the Board of Trustees of the Fund consisted of Salvatore T. Busacca (the Plaintiff's father), the president of Local 436, and the chairman of the Board of Trustees of the Fund; Romeo Turchi; Gary M. Tiboni, the Secretary–Treasurer of Local 436, and a trustee of the Fund; and Michael Paventi, a Trustee and business agent for Local 436, and a Trustee for the Fund; and Management Trustees, Everret Bruder, Jerome Schleifer, David Marinelli, William Riley and William Miesz.

During his employment with the Fund, Plaintiff performed ministerial tasks such as preparing Fund checks to pay such items as utility bills, office supplies and legal services. Plaintiff's job duties for the Fund included designing and assisting computer programmers in programming layouts and debugging programs, preparing software layouts to report 1099's, W2P's and W2's for year-end tax reporting. Plaintiff was also responsible for

---

**1.** The parties have not revealed when Plaintiff began his employment with the Fund; nor do they state when Plaintiff left its employ. In his deposition taken on March 27, 1996, Plaintiff stated that he has been employed by his current employer, Cleveland Federation of Musicians, for approximately four years and that previous to his employment with Cleveland Federation of Musicians he was employed by the Fund. (Plaintiff's Dep. at 4) Thus, the latest date that Plaintiff could have been employed by the Fund is March, 1992. The Complaint in the instant case was filed on August 2, 1995.

preparing monthly delinquent listings for the Fund, including calculating interest along with penalty charges and converting these calculations to a billing each month. Plaintiff was further responsible for maintaining correspondence and reports of all audited companies and assisted in performing payroll compliance audits. During his employment, Plaintiff neither rendered nor provided any investment advice to the Board of Trustees regarding the Fund's assets nor had any authority or responsibility to give investment advice. Plaintiff did not sign checks and was not authorized to sign checks on behalf of the Fund. At no time during his employment was Plaintiff a Trustee of the Fund. Plaintiff was not a "fiduciary", a "participant" or a "beneficiary" or a "party in interest" of the Fund as defined in ERISA at the time he filed his Complaint in this action. While Plaintiff was an employee of the Fund, he was a "party in interest," as defined in ERISA.

Plaintiff's father and Deborah Hanson, a former office manager of the Fund, were indicted on April 15, 1986, in the United States District Court for the Northern District of Ohio, Case No. CR86–81. Among other charges, the indictment charged that Sam T. Busacca (Plaintiff's father) embezzled money from the Welfare Fund and Deborah Hanson participated with Sam T. Busacca in the embezzlement. Sam T. Busacca and Deborah Hanson were jointly tried and convicted on various counts. The trial opened May 6, 1987 and concluded with a guilty verdict on August 21, 1987.

After the indictments, Salvatore T. Busacca and Deborah Hanson requested the Fund to advance their legal expenses. During special meetings of the Board of Trustees of the Fund held on June 3, 1986, March 12, 1987, and May 31, 1987, the Board of Trustees of the Fund considered and ultimately passed a motion to advance legal fees for the defense of Sam T. Busacca and Deborah Hanson from the Fund. Before passing the motion, the Board of Trustees found that there were no reasonable grounds for the indictment of Sam T. Busacca or Deborah Hanson and that neither had breached a fiduciary responsibility. The advancement of legal fees to Sam T.

Busacca and Deborah Hanson was further conditioned on an agreement by both to reimburse the Fund for such fees in the event that the criminal lawsuit was ultimately resolved with other than an acquittal or dismissal of charges.

On or about March 31, 1988, a civil action was filed by the United States Department of Labor ("DOL") against seven former Fund Trustees, two current Fund trustees and one former employee of the Fund (not Plaintiff) and one attorney retained to represent said former employee pursuant to the civil provisions of ERISA.

On or about April 5, 1988, the Fund filed a civil action against one former Fund Trustee, a former Fund employee (not Plaintiff) and against three lawyers and four law firms for violations of ERISA, breach of contract and legal malpractice.

On December 5, 1988, Plaintiff along with his father, Sam T. Busacca, chairman of the Board of Trustees, Pat Lanese, Office Manager of the Fund; Michael Paventi, Trustee of the Fund, and Gary M. Tiboni, Trustee of the Fund were indicted pursuant to 18 U.S.C. § 664; 18 U.S.C. § 1962(c) and (d); Case No. 88 CR 356.

The eight count indictment charged Plaintiff with violations of Title 18, U.S.C. §§ 664,2 and 1962(d) stemming from actions he took during the period from June of 1987 through August of 1987 as an office employee for the Fund. Plaintiff was charged with preparing six separate Fund checks in excess of $250,000 which were made payable to Sam T. Busacca. Criminal defendants Paventi, Lanese and Tiboni were charged with signing and issuing these six checks "without the prior authorization of Local 436 Welfare Fund Board of Trustees."

Plaintiff entered a plea of not guilty to each and every allegation charged in the indictment and retained a Cleveland trial attorney, Elmer Giuliani, Esq. to defend him. The trial in Case No. 88 CR 356 began on August 7, 1989; and on December 20, 1989, Busacca as well as defendants Tiboni and Paventi were found not guilty on all counts of the indictment. Salvatore T. Busacca was found guilty. Plaintiff paid Mr. Giuliani a

retainer fee of $30,000 to defend him in the criminal case.

In early 1990, Plaintiff and other defendants who were acquitted of all criminal charges in Case No. 88 CR 356 requested reimbursement from the Fund for the legal fees they incurred in defending themselves. During a Board of Trustees meeting held on January 11, 1990, Trustee Chairman Gary M. Tiboni requested that the Fund reimburse himself, Michael Paventi and Plaintiff for the legal fees expended and incurred on their behalf in Case No. 88 CR 356. Plaintiff's bill from Mr. Giuliani was presented to the Board by Mr. Tiboni at this meeting.

At no time did the Fund specifically promise orally or in writing, to reimburse and/or indemnify Plaintiff for his legal fees while he was an employee of the Fund. Plaintiff does not possess, nor is he aware of, any resolutions or other commitment from the Board of Trustees specifically authorizing the Fund to reimburse him.

By letter dated April 4, 1990, the Department of Labor ("DOL") advised attorneys for the Fund of its position concerning reimbursement of the legal fees to the Trustees and Plaintiff. By letter dated July 16, 1990, the Fund Administrator, Gary A. Boncella, advised Busacca's attorney, Mr. Giuliani, that the Fund was still entertaining Busacca's request for reimbursement of his legal fees but that there was "no obligation on the Welfare Fund to make that reimbursement."

On or about January 3, 1991, Plaintiff filed a Complaint for Declaratory Judgment naming the Fund and the DOL as defendants, seeking reimbursement of his legal fees. This case, styled Salvatore I. Busacca v. Board of Trustees of Excavating Building Material and Construction Drivers Local Union 436 Welfare Fund, et al., was assigned to the Honorable Judge Alvin I. Krenzler, Case No. 1:91 CV 0017. On July 11, 1991, Judge Krenzler issued a memorandum of opinion and order dismissing Busacca's Complaint for Declaratory Judgment in Case NO. 1:91 CV 0017.

On or about May 19, 1992, all parties to the two civil actions (filed by the DOL on March 31, 1988 and by the Fund on April 5, 1988) voluntarily entered into a Consent Order whereby all claims and causes of action by and against all parties thereto were released and dismissed with prejudice. Plaintiff was not a defendant in either civil action. There was no finding of civil liability or breach of fiduciary duty against any party in these actions and the consent order required the total payment of $490,000 by various party defendants to the Fund.

Since settlement of the civil actions, Plaintiff has orally and in writing, requested that the Fund decide whether the Fund will reimburse him his legal fees. By letters dated September 24, 1992, January 4, 1993, and February 24, 1994, Plaintiff formally requested a decision concerning his legal fees. To date, Plaintiff's request for reimbursement has been neither granted nor denied by the Fund.

On April 5, 1994, the Fund passed a motion declaring that it would seek a legal declaration to reimburse Trustee Gary Tiboni for his legal fees expended in the criminal action. On or about August 18, 1994, the Fund filed a Complaint for Declaratory Judgment, naming the DOL as a defendant, seeking an Order allowing the Fund to reimburse Trustee Gary Tiboni the attorney fees he expended in defending himself in the criminal action (Case No. 88 CR 356). The case was assigned to the Honorable Judge George W. White, Case No. 1:94 CV 1691. On or about November 18, 1994, Plaintiff filed an Application to Intervene and Complaint in Intervention in the Fund's Declaratory Judgment action seeking a declaration that not only should Tiboni's legal fees be reimbursed, but Plaintiff's legal fees should be reimbursed as well. Prior to the Court's ruling on Plaintiff's Application to Intervene, the Fund voluntarily dismissed, without prejudice, its Complaint for Declaratory Judgment in Case No. 1:94 CV 1691.

## LAW AND ARGUMENT

### I. Motion to Dismiss

In considering a Motion to Dismiss brought pursuant to Fed.R.Civ.P. 12(b)(1) mounting a factual attack upon the court's subject matter jurisdiction, this Court will

not presume the allegations of fact in the complaint to be true. *Kroll v. United States*, 58 F.3d 1087, 1090 (6th Cir.1995); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). Rather, this Court will weigh the conflicting evidence to determine whether the proper jurisdiction exists. *See, RMI Titanium Co. v. Westinghouse Elec. Corp,* 78 F.3d 1125, 1135 (6th Cir.1996); *Ohio Nat. Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). In weighing the evidence, a district court has discretion to consider affidavits; documents outside the complaint, as well as conduct a limited evidentiary hearing, if necessary, to resolve disputed jurisdictional facts. However, at all times, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the subject matter. *See RMI Titanium, supra,* 78 F.3d at 1134; *Ohio Nat'l, supra,* 922 F.2d at 324; *Friedman v. United States,* 927 F.2d 259, 261 (6th Cir.1991).

Plaintiff's Complaint contains two counts. The first is a request that the court enter a declaratory judgment finding that ERISA does not prohibit the Fund from indemnifying Plaintiff for his legal expenses. The second count seeks indemnification. Defendants contend that Plaintiff has no standing to bring this action under ERISA seeking a declaratory judgment, therefore this Court has no subject matter jurisdiction over this action. Plaintiff's Complaint asserts that this Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) of ERISA and 28 U.S.C. § 1331.

■ Section 1132(e)(1) provides in pertinent part as follows: "the district court shall have exclusive jurisdiction over civil actions under this subchapter, brought by the Secretary, a participant, beneficiary, fiduciary, or any other person referred to in section 1021(f)." The persons empowered to bring a civil action under ERISA are enumerated in 29 U.S.C. § 1132(a), the civil enforcement provision of ERISA. Under that section only participants, beneficiaries, fiduciaries, or the Secretary of Labor may pursue civil actions under ERISA. *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 27, 103 S.Ct. 2841, 2855, 77 L.Ed.2d 420 (1983) (ERISA

carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment. . . . A suit for similar relief by some other party does not "arise under" that provision.) See also, *Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund,* 794 F.2d 221, 228 (6th Cir.1986), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986).

The Plaintiff in this action is a former employee of an employee benefit plan who performed ministerial functions. He was not a participant, a beneficiary or a fiduciary as defined in ERISA. A fiduciary is defined for purposes of ERISA in 29 U.S.C. § 1002(21)(A) as follows:

> . . . a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its asset, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or any discretionary responsibility in the administration of such plan. . . .

Under the facts stipulated by the parties it is apparent that Plaintiff did not perform any fiduciary functions. Plaintiff's tasks were ministerial in nature and did not involve discretionary authority involving the management of the Fund or its assets. Since Plaintiff is not one of the persons enumerated in 29 U.S.C. § 1132(a) who can maintain an action under ERISA, it does not appear that Plaintiff can premise jurisdiction on 29 U.S.C. § 1132(e). *Accord, Whitworth Brothers, supra,* 794 F.2d 221, 225.

■ Plaintiff, citing the Sixth Circuit's opinion in *Whitworth Brothers, supra* 794 F.2d 221, also asserts that this Court has jurisdiction under 28 U.S.C. § 1331 because his indemnification claim is governed by fed-

eral common law and ERISA preempts his state law claim.

In *Whitworth Brothers* an employer sued to recover payments mistakenly made to an employee retirement plan covered by ERISA. The Sixth Circuit held that ERISA provided neither an express nor an implied cause of action for an employer, but preemption of state law by ERISA provided a federal common law cause of action of restitution for the employer. The Court referred to ERISA's broad preemption provision, 29 U.S.C. § 1144(a) which states in pertinent part:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter *shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

(Emphasis added) The Court further stated:

> We have held that ERISA's preemption provision in light of the legislative history and purpose 'was intended to create a body of federal substantive law regulating pension plans,' *Authier [v. Ginsberg]*, 757 F.2d [796,] 799 n. 5 [6th Cir.1985], to make 'enforcement of ERISA solely a federal concern,' *id.* at 801, and 'to establish a uniform federal law regulating pension plans,' *id.* at 802; *Franchise Tax Board*, 643 [463] U.S. at 20–26[, 103 S.Ct. at 2851–55]. 'The legislative history demonstrates that Congress intended federal courts to develop federal common law in fashioning' relief under ERISA.

*Whitworth Brothers, supra*, 794 F.2d at 234–35, (footnote and citations omitted) The Court found that the employer's restitution claim clearly related to the plan, since determining whether the employer had overpaid the plan "inevitably requires interpretation" of the plan's provisions. Accordingly, ERISA preempted the employer's state law restitution claim. Thus, the Court concluded

that the employer's claim must arise under the federal common law, which is encompassed by the District Court's federal question jurisdiction, 28 U.S.C. § 1331. See also *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972) (§ 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.)

In this case, Plaintiff seeks indemnification of legal fees expended in defending criminal charges of misconduct in his employment with the Fund. This claim clearly "relates to" the plan because, as Defendants correctly contend, a determination of Plaintiff's claim requires reference to the Fund's Trust Agreement and provisions of ERISA. Thus, Plaintiff's claim is preempted by ERISA. As in *Whitworth Brothers*, Plaintiff's claim arises under federal common law and falls within this Court's federal question jurisdiction. *See also, Auto Owners Insurance Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371, 374 (6th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995). Accordingly, Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) (Document # 12) is denied.[2]

## II. Motion For Summary Judgment

Defendants filed a Motion For Summary Judgment (Document # 13) at the same time that it Moved to Dismiss on the ground that no genuine issues of material fact existed and Defendants were entitled to judgment as a matter of law.

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions

---

2. Defendants' assertion that there is no case or controversy is misplaced. Under the circumstances in this case Defendants have implicitly, if not explicitly, denied Plaintiff's request for indemnification. Accordingly, there is a contro-

versy between parties with adverse legal interests, of sufficient immediacy and reality to meet the requirements of Article III, § 2, cl. 1 of the United States Constitution.

of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *see also U.S. v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson*, at 248–49, 106 S.Ct. at 2510–11 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir.1995). The text of FED.R.CIV.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.*, 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

■ Defendants assert that Plaintiff is not entitled to indemnity for his legal fees as a matter of law because the Trust Agreement does not permit it and ERISA prohibits it. Plaintiff has asked the Board of Trustees of the Fund to reimburse him for legal expenses that he incurred in defending himself against criminal charges of misconduct brought against him for actions taken while working as an employee of the Fund. The actions of trustees or fiduciaries in relation to an ERISA benefit plan are directed by the provisions of ERISA. Specifically, section 1104(a)(1)(D) directs fiduciaries to discharge

their duties with respect to the plan "in accordance with the documents and instruments governing the plan...." A Fund's Trust Agreement and Plan are "documents and instruments" within the meaning of section 1104(a)(1)(D). *Winpisinger v. Aurora Corp.,* 456 F.Supp. 559, 567 (N.D.Ohio 1978).

Several provisions of the Trust Agreement demonstrate that the Board of Trustees has no authority to indemnify non-fiduciary employees. First, Article X, § 3 of the Trust Agreement states that "[n]o ... employee of ... the Welfare Fund, shall have the right to maintain any action of any nature whatsoever against any member of the Board in his capacity as Trustee, or the Board collectively in their capacity as Trustees, except for such action as may be a violation of any Federal or State law or municipal ordinance." Plaintiff does not allege any violation of federal, state or local law. This section barred plaintiff, as an employee of the Fund, from bringing an indemnification action against the trustees. However, at the time that he filed this action Plaintiff was no longer an employee of the Fund. Nevertheless, Plaintiff is clearly suing for indemnification of expenses incurred as a result of his actions during his employment with the Fund.

Secondly, the Trust Agreement specifically authorizes the Fund to "reimburse and/or indemnify the Trustees for the cost and expense of any suit or proceeding brought by or against them ... arising out of or relating to their services or activities as Trustees to this Welfare Fund, including attorney fees...." (Article VI, § 4(c), Trust Agreement at 10) The Trust Agreement provides for indemnification of trustees because trustees are not compensated for their work as trustees. Moreover, various fiduciary duties are imposed upon fiduciaries of ERISA plans by 29 U.S.C. § 1104, and breach of those duties creates liability under 29 U.S.C. § 1109. Thus, fiduciaries assume the risk of personal liability. Indemnification provisions for trustees in plan documents are necessary to get people to agree to undertake the job of trustee and the concurrent responsibilities and obligations that come with it.[3] Plaintiff,

---

**3.** Courts have upheld similar indemnification provisions in plan documents for trustees and

other fiduciaries finding that they do not violate 29 U.S.C. § 1110 which provides that "any pro-

as a ministerial employee of the Fund, did not undertake fiduciary obligations and was compensated for his ministerial work for the Fund. The Trust Agreement does not provide for indemnification of non-fiduciary employees such as Plaintiff. As the Fund argues, the drafters of the Trust Agreement knew how to authorize indemnification when they wished to do so, therefore, the lack of any reference to non-fiduciary employees in section 4(c) and the forbidding language of Article X, § 3 indicates that actions for indemnification of legal fees by non-fiduciary employees are prohibited by the Trust Agreement.[4]

Further, Defendants contend that the Trustees are constrained from agreeing to indemnify Plaintiff by certain ERISA provisions relating to the performance of a trustee's fiduciary duties. Section 1104(a)(1) provides in relevant part:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(I) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan.

29 U.S.C. § 1104(a)(1) (1996). Accord, *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995) (there are three components to fiduciary duties under ERISA: (i) all decisions regarding an ERISA plan must be made with an eye only to the interests of the participants and beneficiaries; (ii) the "prudent man" obligation to act prudently with single-minded devotion to plan participants and beneficiaries; and (iii) fiduciary must act for the exclusive purpose of providing benefits to plan beneficiaries.); *Ogden v. Michi-*

*gan Bell Telephone Co.*, 595 F.Supp. 961, 964 (E.D.Mich.1984) (ERISA creates two duties of a fiduciary: he must discharge his duties solely in interest of the plan's participants, and for the exclusive purpose of providing benefits and defraying the costs of administering the plan and must perform his duties with reasonable care.)

It is clear that payment of Plaintiff's legal fees would provide no benefit to the Fund, to the participants or its beneficiaries. Moreover, it is doubtful that the legal fees of a non-fiduciary employee are a reasonable administrative expense. It was not an expense contemplated in the Trust Agreement or by the Fund or by Plaintiff when he was hired by the Fund. Accordingly, the Board of Trustees' argument that it would breach their fiduciary duties to the Fund and its participants and beneficiaries if they authorized payment of Plaintiff's legal fees is compelling. The underlying purpose of ERISA is to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b).

Lacking any written indemnity contract, or any support for his indemnification demand in the Trust Agreement or ERISA, Plaintiff argues that he is entitled to indemnity based upon the common law of agency and the Restatement of Agency (Second). While Plaintiff may have a common law indemnification claim against his father for instructing him to do the things for which he was indicted, this Court will not create a right to indemnification from the Fund when the Trust Agreement and the fiduciary provisions of ERISA militate a rejection of Plaintiff's request for indemnification. Any other conclusion would violate the primary goal of ERISA, which is to safeguard the financial

vision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." *See, Packer Engineering, Inc. v. Kratville*, 965 F.2d 174 (7th Cir.1992) (Erisa does not void provision in pension plan allowing indemnification of fiduciary who has been absolved of wrongdoing.)

**4.** Defendants suggest that this interpretation of the Trust Agreement is consistent with the position of the Department of Labor with respect to

the issue of indemnification of non-fiduciary employees of ERISA benefit plans. The DOL addressed potential exceptions to the prohibitions in 29 U.S.C., Section 1110(a), regarding provisions in the plan instruments purporting to relieve a fiduciary from any responsibility or liability. The DOL stated that indemnification of fiduciaries and their employees, who *"actually perform the fiduciary services"* may be proper. 29 C.F.R. § 2509.75–4. Non-fiduciary employees performing ministerial functions were excluded by omission.

**876**

integrity of qualified plans by shielding them from unanticipated claims. *See, Auto Owners Insurance Co., supra,* 31 F.3d at 375.

### Conclusion

For the foregoing reasons, the Court finds that there are no genuine issues of material fact in dispute and that Defendants are entitled to Judgment as a matter of law. Accordingly, Defendants' Motion For Summary Judgment pursuant to Fed.R.Civ.P. 56 (Document #13) is GRANTED. Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) (Document #12) is DENIED.

IT IS SO ORDERED.