RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GIRL SCOUTS OF MIDDLE TENNESSEE, INC.,

*Plaintiff-Appellant,*

No. 13-6347

*v.*

GIRL SCOUTS OF THE U.S.A.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:12-cv-00575—John T. Nixon, District Judge.

Argued: June 19, 2014

Decided and Filed: October 23, 2014

Before: SILER, CLAY, and GIBBONS, Circuit Judges.

---

### COUNSEL

**ARGUED:** Ames Davis, WALLER LANSDEN DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellant. Mary Helen Wimberly, HOGAN LOVELLS US LLP, Washington, D.C., for Appellee. **ON BRIEF:** Ames Davis, WALLER LANSDEN DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellant. Mary Helen Wimberly, Neal Kumar Katyal, HOGAN LOVELLS US LLP, Washington, D.C., Kenneth Kirschner, Vi T. Vu, HOGAN LOVELLS US LLP, New York, New York, for Appellee.

_____

**OPINION**

_____

SILER, Circuit Judge.   Girl Scouts of Middle Tennessee, Inc. ("GSMT") sued Girl Scouts of the United States of America ("GSUSA"), the Sponsor and Administrator of the National Girl Scout Councils Retirement Plan (the "Plan"), for increasing the liabilities of the Plan unilaterally and without authorization.   As originally pleaded, GSMT's principal claims appeared to allege violations of the Employee Retirement Income Security Act ("ERISA"), federal common law, and state common law.   GSMT also asserted an alternative claim under Tennessee Code Annotated § 48-53-104.   The district court dismissed the principal claims, finding the ERISA and state common law claims preempted and declining to create a cause of action under federal common law.   It similarly dismissed the alternative claim as preempted and for insufficient pleading.   GSMT appeals the dismissal of its principal and alternative claims.  For the reasons that follow, we AFFIRM.

**BACKGROUND**

GSUSA is a District of Columbia nonprofit corporation with its principal place of business in New York City, New York.   GSMT is a Tennessee nonprofit corporation with its principal place of business in Nashville, Tennessee, and is one of 112 independent councils that GSUSA currently charters.

**A.  The Agreement and Plan**

Any council that elects to participate in the Plan may do so by entering into an independent agreement with GSUSA regarding the Plan's administration.   In 1974, GSUSA and GSMT's predecessor entered into a Voluntary Participation Agreement (the "Agreement") that memorialized GSUSA's agreement to serve as GSMT's agent in administering the Plan.   Among other things, the Agreement authorizes GSUSA to determine GSMT's rate of contribution and to modify the Plan, but GSUSA's authority "to act on [GSMT's] behalf in regard to the Plan and the Contract [is] subject at all times to [GSMT's] instructions."

The Plan is a defined benefit pension plan governed by ERISA.  *See* 29 U.S.C. §§ 1001-1461.  Referring to GSUSA as the "Named Fiduciary," the Plan confers fiduciary responsibilities upon GSUSA to discharge its duties to the exclusive benefit of the employees of the participating Girl Scout councils.  *See* 29 U.S.C. § 1104.  GSUSA may amend the plan only where the amendment does not alter the basic purposes of the Plan.  The Plan prohibits employers from amending its provisions, and an employer can terminate its participation in the Plan only if GSUSA consents.  Upon withdrawal, the Plan provides that employers may form a spin-off retirement plan by transferring the assets and liabilities attributable to that employer's employees to another tax-qualified pension plan, with the express consent of GSUSA.

Congress organized the ERISA pension plans into two categories.  A multiemployer plan is a pension plan comprised of more than one contributing employer and maintained pursuant to a collective bargaining agreement.  *See* 29 U.S.C. § 1002(37)(A).  A single-employer plan is every other type of pension plan.  *See* 29 U.S.C. § 1002(41).  The Plan is considered a multiple-employer plan under ERISA, because multiple, separate and independent corporations participate in the Plan, but it is not maintained pursuant to a collective bargaining agreement.  Therefore, the Plan falls within ERISA's catch-all category of single-employer plans.  *See* 29 U.S.C. §§ 1002(41), 1301(a)(15).

## B.  The Amendments to the Plan

In 2005, GSUSA chartered 312 councils until it decided to restructure its organizational composition by merging or combining many of the councils into 112 councils, in a process it called the "Realignment."  In so doing, GSUSA merged councils that did not participate in the Plan with participating councils and enabled approximately 1,850 nonparticipating employees to become eligible to receive a lifetime pension annuity benefit without having previously contributed to the Plan.

In 2006, GSUSA amended the Plan to include the Voluntary Early Retirement Incentive Plan ("VERIP").  The amendment permitted participants to subsidize and accelerate eligibility

for their pensions.   Eligible consolidated councils could offer their employees the option to terminate employment and receive "enhanced benefits" under the Plan.[1]

GSMT argues that as a result of the Realignment and the VERIP amendment, GSUSA caused GSMT to incur massive new liabilities.   As of January 2007, the Plan was operating with a surplus of over $150 million, but by September 2011, the Plan had accumulated a deficit close to $340 million.   GSUSA contends that the deficit resulted from the country's recession.   To compensate for the shortage, GSUSA implemented a structured increase of its councils' contribution rates.   For GSMT, from 2000 until 2008, GSUSA applied a contribution rate of 3%, but increased the rate to 3.8% in 2009, 9% in 2010 and 2011, and 10% in 2012.   The rate is scheduled to continue to increase through 2023, at which point it is expected to reach between 10% and 16%.

Despite GSUSA's deficit, GSMT was one of eighteen councils operating at a surplus in 2010.   In February 2011, GSMT, through its counsel, notified GSUSA that it intended to withdraw from the Plan and form a spin-off retirement plan.   After several communications between counsel for GSUSA and GSMT, GSUSA finally informed GSMT that it would not grant GSMT permission to withdraw or form the proposed spin-off.

**C.  The Lawsuit**

GSMT filed a complaint against GSUSA in 2012, bringing three principal claims and a fourth alternate claim for relief.   The first principal claim sought a declaratory judgment that (a) GSMT is not obligated to continue to participate in the Plan in perpetuity, and may withdraw from the Plan; (b) GSUSA is required to participate in a spin-off of Plan assets and liabilities attributable to GSMT's employees; (c) GSUSA's unauthorized amendments to the Plan are not binding on GSMT; and (d) GSUSA is required to indemnify GSMT for any liability resulting from a distress termination of the Plan.   The other principal claims requested an accounting of the financial condition of the Plan and prayed for injunctive relief restraining GSUSA from

---

[1]In 2009, GSUSA further amended the Plan when the National Board of Directors added an arbitration provision for disputes in connection with the employer's nonpayment to or withdrawal from the Plan.  Pursuant to this amendment, GSUSA moved the district court in this case to stay proceedings pending arbitration.  In opposing the motion, GSMT refused to arbitrate these claims, contending GSUSA had no authority to enact the arbitration amendment.

collecting or seeking to enforce contributions from GSMT to be used for new Plan participants or VERIP. In the alternative, GSMT sought a declaratory judgment that GSMT's grant of authority to GSUSA was *ultra vires* in violation of Tenn. Code Ann. § 48-53-104 and therefore void.

GSUSA filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction on standing grounds, and 12(b)(6), for failure to state a claim to relief. Although it found that GSMT had standing to pursue its claims against GSUSA, the district court dismissed the case under Rule 12(b)(6). The court found the ERISA and state common law claims preempted and refused to extend the federal common law to create a cause of action in this context. The court then dismissed the fourth, alternative claim as preempted and for insufficient pleading. Although it is not entirely clear which of these rulings GSMT appeals, we address each and find that the district court properly applied the law to the issues and correctly dismissed the case.

## STANDARD OF REVIEW

Whether a district court properly dismissed a suit pursuant to Rule 12(b)(6) is a question of law subject to *de novo* review. *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). We must ensure that the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). However, we may not "accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1050 (6th Cir. 2011).

## DISCUSSION

### A. ERISA Claims

Congress enacted ERISA in 1974 "to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Firestone*

*Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotation marks and citation omitted). This "comprehensive regulation of employee welfare and pension benefit plans" provides "administrative oversight, imposes criminal sanctions, and establishes a comprehensive civil enforcement scheme." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650-51 (1995) (internal citations omitted). The civil enforcement mechanisms permit participants, beneficiaries, and fiduciaries to pursue claims concerning employee benefits and rights, *see* 29 U.S.C. § 1132, and fiduciaries, contributing sponsors, members of contributing sponsor's controlled groups, participants, and beneficiaries to bring some claims regarding withdrawal from or termination of single-employer plans, *see* 29 U.S.C. § 1370(a). Additionally, for multiemployer plans, employers are permitted to bring some claims based on withdrawal from or termination of pension plans. *See* 29 U.S.C. § 1451(a)(1). ERISA also mandates that certain disputes between employers and multiemployer plan administrators must be arbitrated. *Id.*

As an employer in a multiple-employer plan, GSMT concedes that it has no valid cause of action under ERISA, *see Whitworth Brothers Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 794 F.2d 221, 225, 227 (6th Cir. 1986) (explaining that the principal civil enforcement provision of ERISA did not grant jurisdiction to employers, aside from some causes of action under multiemployer plans), except when that employer may be considered an ERISA plan fiduciary, which GSMT has not alleged, *see Great Lakes Steel, Division of National Steel Corp. v. Deggendorf*, 716 F.2d 1101, 1102 (6th Cir. 1983) (finding that an ERISA plan fiduciary "exercise[s] discretionary authority," "discretionary control," or "discretionary responsibility" with respect to the Plan's management, administration, or assets under 29 U.S.C. § 1002(21)(A)). Accordingly, there is no jurisdiction for GSMT to pursue claims under ERISA, and to the extent GSMT appealed the dismissal of its ERISA claims, we affirm.

### B. State Law Claims

ERISA mandates that its provisions "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a), (b)(2)(B). State laws relate to ERISA plans if they:

> (1) mandate employee benefit structures or their administration; (2) provide alternative enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

The district court held that although this case is unique because an employer seeks to effectuate its rights that it could not otherwise pursue under ERISA, the claims for breach of contract and fiduciary duty brought under state common law are preempted. On appeal, GSMT appears to concede this point. ERISA specifically provides for remedies for breaches of contract and fiduciary duties, so any state law claim that granted relief for these breaches would "duplicate[], supplement[], or supplant[] the ERISA civil remedies." *See Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999) (citing *Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157, 161 (6th Cir. 1989)). Further, claims for breaches of contract and fiduciary duties under the Plan necessarily relate to the ERISA benefit plan. *See Lion's Volunteer Blind Indus., Inc. v. Automated Grp. Admin., Inc.*, 195 F.3d 803, 808 (6th Cir. 1999) (citing *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991)); *Perry*, 872 F.2d at 161; *Whitworth Bros.*, 794 F.2d at 234. Because GSMT has no recourse under ERISA or state common law, it seeks relief under the federal common law.[2]

---

[2]GSUSA notes that GSMT had other recourse: it could have withdrawn by purchasing an annuity, it could have accepted GSUSA's offer to arbitrate, and it could have filed a complaint with the Secretary of Labor.

## C.  Federal Common Law Claims

While the Supreme Court has often reiterated that ERISA is a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361 (1980), it has also made clear that federal "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans'" to fill the interstices of the statute.  *Bruch*, 489 U.S. at 110 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)).  Accordingly, where ERISA does not provide for a particular cause of action, the Supreme Court permits state law claims to be "repackaged and saved as claims arising under federal common law.  However, federal common law is developed under ERISA only in those instances in which ERISA is silent or ambiguous."  *Muse v. Int'l Bus. Machs. Corp.*, 103 F.3d 490, 495 (6th Cir. 1996).  GSMT contends that because ERISA fails to address an employer's claims of breach of contract and breach of fiduciary duties under a multiple-employer plan and parallel state law claims are preempted, federal courts are required to apply federal common law.  *See Bruch*, 489 U.S. at 110.

We limit the circumstances under which a court can create federal common law to: 1) "instances in which ERISA is silent or ambiguous"; 2) "where there is an awkward gap in the statutory scheme"; or 3) "where it may be said that federal common law is essential to the promotion of fundamental ERISA policies."  *Local 6-0682 Int'l Union of Paper v. Nat'l Indus. Grp. Pension Plan*, 342 F.3d 606, 609-10 (6th Cir. 2003) (internal quotation marks and citations omitted).  GSMT argues its claims—that GSUSA's amendments to the Plan without GSMT's consent breached GSUSA's contractual obligations under the Agreement establishing that GSUSA is subject at all times to GSMT's instructions, and thereby also breached its fiduciary duties, and that GSUSA breached the contract by refusing to allow GSMT to withdraw from the Plan and form a spinoff benefit plan—fall within these three enumerated circumstances.  Analyzing the breach of contract and breach of fiduciary duty claims separately, we hold that the creation of federal common law is inappropriate here.

### 1.  Contractual Claims

GSMT argues that we are permitted to create federal common under all three *Local 6-06082* circumstances.  First, GSMT avers that ERISA is silent as to its contractual claims that

GSUSA breached its contractual obligations by amending the Plan without GSMT's consent, refusing to permit GSMT's withdrawal, and declining to participate with GSMT in a spin-off of Plan assets. However, ERISA is not silent as to breach of contract claims.

"A federal court may create federal common law based on a federal statute's preemption of an area only where the federal statute does not expressly address the issue before the court." *Flacche v. Sun Life Assurance Co. of Canada*, 958 F.2d 730, 735 (6th Cir. 1992) (internal quotation marks and citation omitted). ERISA provides for civil enforcement of its provisions under § 502, 29 U.S.C. § 1132. *See Mass. Mut. Life. Ins. v. Russell*, 473 U.S. 134, 139-40 (1985). This provision offers a means "to enforce [] rights under the terms of the plan," "to clarify [] rights to future benefits under the terms of the plan," "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a). Further, ERISA provides that certain parties may bring an action for violations of its termination and withdrawal provisions for single-employer plans and of its withdrawal regulations for multiemployer plans. *See* 29 U.S.C. §§ 1370, 1451. Each provision, by a plain reading of its terms, provides a cause of action arising out of a contract. GSMT's claims could be brought under these provisions if GSMT was a party permitted to enforce them. Thus, ERISA is far from silent on the contractual claims GSMT alleges. ERISA simply fails to afford GSMT an avenue for recovery in this context. *See Whitworth Bros.*, 794 F.2d at 228 (acknowledging that the court had no jurisdiction under § 502 to consider the ERISA claim of an employer, because an employer is not listed in § 502). Where ERISA allows for recovery on an issue under some but not all circumstances, ERISA is not silent on that issue. *See Local 6-0682*, 342 F.3d at 609. The silence argument is unavailing.

ERISA also does not contain an awkward statutory gap within which the contract claims fall. To support its awkward gap argument, GSMT references the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461. Congress had become aware of vast problems with multiemployer plans, so it enacted the MPPAA to fill statutory gaps, including those concerning withdrawal procedures and regulating the method of resolving

disputes between a contributing employer and a plan sponsor—arbitration.[3]    29 U.S.C. § 1301(a)(3); *see Pension Benefits Guar. Corp. v. R. A. Gray & Co.*, 467 U.S. 717, 721-23, 725 (1984).  The MPPAA only applies to multiemployer plans.  *See* 29 U.S.C. § 1301-1371.  ERISA provisions concerning single-employer pension plans continue to offer no recourse for employers to seek liability for violations of ERISA's withdrawal provision or to pursue rights against the plan sponsor under multiple-employer plans.  GSMT argues that the enactment of MPPAA highlights ERISA's failure to solve problems of multiple-employer plans similar to those that plagued multiemployer plans.  Additionally, GSMT highlights other gaps: that ERISA provides guidelines on how benefits plans should operate but fails to provide an enforcement mechanism for employers in multiple-employer plans if the plan administrator deviates from the plan, and that ERISA mandates that every plan have a procedure for amending the plan but does not prescribe what that procedure must entail or how to address issues with the amendment process.

GSMT presents no arguments to show that these gaps are awkward or that federal courts are permitted to establish federal common law to fill the gaps.  GSMT's claims fall within the purview of a specific provision of ERISA, the civil enforcement provision, § 502.  "The statute's standing provision, § 502, lists four categories of '[p]ersons empowered to bring a civil action'— namely, participants, beneficiaries, plan fiduciaries, and the Secretary of Labor—and this list is exclusive."  *Local 6-0682*, 342 F.3d at 609 n.1.  Courts construe the list as exclusive because "Congress intended to limit the parties who could maintain actions pursuant to section 502." *Whitworth Brothers*, 794 F.2d at 228.  When claims fall under § 502, but a party has no right to sue under that provision, the claim cannot "be reasserted as [a] separate claim[] arising under federal common law."  *Cent. States Se. & Sw. Areas Pension Fund v. Mahoning Nat'l Bank*, 112 F.3d 252, 256-57 (6th Cir. 1997) (quoting *Muse*, 103 F.3d at 495).

GSMT's arguments can be viewed in one of two ways: as requesting that the court add employers of multiple-employer plans to the list of those parties authorized to bring civil remedies under § 502 or as requesting more generally that the court identify and remedy the

---

[3]GSUSA reiterates on several occasions that if GSMT was correct that the district court should have created federal common law to permit its claims to proceed against GSUSA, the MPPAA reflects Congress's decision as to the appropriate method of dispute resolution under these circumstances—arbitration.  GSUSA offered to arbitrate the case.

failure of ERISA to account for the unique status of employers of multiple-employer plans. As to the former, we cannot remedy the omission of employers of multiple-employment plans from the civil enforcement sections of ERISA because we are not permitted to amend ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Russell*, 473 U.S. at 146. Those parties empowered to pursue civil remedies in § 502 are the manifestation of Congressional intent. Congress was aware of the status of employers within the ERISA scheme and knew how to include employers in its civil enforcement mechanisms. *See* 29 U.S.C. § 1451(a)(1) (including employers in the list of parties that could sue for issues relating to withdrawal from or termination of multiemployer pension plans). Congress's decision not to include employers was intentional.

Adding employers to the list of parties entitled to pursue civil remedies in § 502 would also violate our proscription against using the federal common law as "an independent source of rights with regard to employee benefit plans." *Mahoning Nat'l Bank*, 112 F.3d at 257. "In the area of ERISA, federal common law is a little like a parasite—it cannot exist in the absence of a statutory host to which to cling." *Id.* Nothing in ERISA suggests that Congress inadvertently omitted employers of multiple-employer plans in § 502. Nothing in ERISA suggests Congress intended employers of multiple-employer plans to recover for these types of contractual claims. Because ERISA proves no authority for recognizing a federal common law right to sue under these circumstances, to do so here would require us to use the federal common law as an independent source of rights. *Mahoning National Bank* prohibits such action.

GSMT counters that *Whitworth Brothers* supports an expansion of federal common law to cover these claims. In *Whitworth Brothers*, the employer mistakenly contributed to the multiemployer benefit plan and sought repayment of the contributions under two provisions: § 502, 29 U.S.C. § 1132, the civil enforcement mechanism that does not expressly provide for an action by an employer against a fund for refund of contributions, and § 403, 29 U.S.C. § 1103(c)(2)(A)(ii), which states that the provision "shall not prohibit the return of [] contribution or payment to the employer . . . after the plan administrator determines that the contribution was made by [] a mistake." 794 F.2d at 222. We found that there was no

jurisdiction for the appellant to pursue its claims under ERISA—§ 502 is an exclusive grant of jurisdiction, *id.* at 228, and Congress did not intend to provide a private right of action under § 403, *id.* at 230-31. We turned to the federal common law to establish jurisdiction under which the employer could sue, because § 403 "evinces congressional intent not to completely preclude employer recovery of mistakenly paid contributions." *Id.* at 236 n.24. In so doing, we joined other courts that have applied "federal law to actions premised on the contractual obligations created by ERISA plans." *Id.* at 235-36.

GSMT argues that *Whitworth Brothers* established that we have a general duty to apply the federal common law to an employer's contractual claims arising under an ERISA plan. However, our case law construes the *Whitworth Brothers* holding narrowly. In *Trustees of Painters Union Deposit Fund v. Interior/Exterior Specialist Co.*, 371 F. App'x 654, 661 (6th Cir. 2010), we held, "The common law right recognized in *Whitworth* is limited by the ERISA provisions permitting refunds of excess contributions only when there is a mistake of fact or law." To reach this conclusion, we focused on the *Whitworth Brothers* footnote stating, "Whitworth's claim is . . . expressly limited by the terms of ERISA set out in section 403(c)(2)(A)." *Id.* (quoting *Whitworth Bros.*, 794 F.2d at 236 n.24). In *Laborers Pension Trust Fund-Detroit and Vicinity v. Interior Exterior Specialists Construction Group, Inc.*, 394 F. App'x 285, 294 (6th Cir. 2010), we described *Whitworth Brothers* as recognizing "a limited right of action under federal common law for equitable restitution of mistaken payments."

The cases GSMT cited for the proposition that *Whitworth Brothers* represents a more generalized holding do not, in fact, support that proposition. For example, in *Auto Owners Insurance Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371, 374 (6th Cir. 1994), we grappled with whether an insurance company that was neither a participant nor a beneficiary in an ERISA plan had jurisdiction, not a federal common law right, to pursue its claims. We cited *Whitworth Brothers* as a case "from this circuit [that has] premised jurisdiction on federal common law when the ERISA preemption provision has effectively deprived a plaintiff of a state law claim." *Id.* Our precedent does not construe *Whitworth Brothers* to impose a general rule requiring the creation of federal common law for contract claims. Accordingly, we find that *Whitworth Brothers* is limited to its facts and may stand for the proposition that an ERISA provision could

offer proof to overcome our conclusion that ERISA's omissions in § 502 are intentional. For purposes of the case *sub judice*, *Whitworth Brothers* supports our holding. GSMT points to nothing within ERISA supporting a conclusion that ERISA's silence concerning employers of multiple-employer plans creates a gap in the statute that is awkward or otherwise improper.

GSMT's call for us to recognize that the awkward gap stemming from ERISA's failure to account for the uniqueness of employers of multiple-employer plans is entwined with its arguments that the policies behind ERISA compel the creation of federal common law here. Specifically, GSMT argues that without a federal common law remedy for employers of multiple-employer plans in this situation, GSUSA's actions undermine the policies of 1) encouraging employers to offer employee benefits, *see Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996), by preventing contributing employers from having a venue for resolving contractual disputes, and 2) promoting the financial soundness of pension benefit plans, *see Whitworth Brothers*, 794 F.2d at 236 n.24, by permitting the plan's sponsor to impair the solvency of a multiple-employer plan on a whim.[4]

The policy arguments are compelling. The Supreme Court has advised that courts have "repeatedly emphasized [ERISA's] purpose to protect contractually defined benefits." *Russell*, 473 U.S. at 148. There is a gap in ERISA concerning multiple-employer plans: the employer under a multiple-employer plan is afforded little right to enforce the terms of the contract it made with plan sponsor or administrator, a fact that leaves employers of multiple-employer plans without a set of laws to protect them, especially from nefarious plan sponsors. ERISA does not specifically protect these parties, which may discourage employers from entering into multiple-employer plans. Employers in multiple-employer plans are in some ways analogous to beneficiaries and participants in single-employer plans, but they have no opportunity to sue over violations of ERISA as can the beneficiary or participant, *see* 29 U.S.C. § 1451. Likewise, employers in multiple-employer plans appear to be similar in certain respects to employers in multiemployer plans, but ERISA fails to prescribe procedures through which employers of

---

[4]GSMT also posits that the failure to create federal common law here undermines ERISA's purpose of establishing a uniform body of federal substantive law, *see Whitworth Brothers*, 794 F.2d at 233, 234, by preventing GSMT from being protected by any set of laws. This argument lacks merit. The uniform body of ERISA law remains intact even though GSMT has no recourse.

multiple-employer plans can resolve disputes with sponsors as it has for employers in multiemployer plans. 29 U.S.C. § 1401. Other circuits have recognized federal common law rights on the basis of broad ERISA policy. *See, e.g.*, *UIU Severance Pay Trust Fund v. Local Union No. 18-U*, 998 F.2d 509, 513 (7th Cir. 1993). However, as explained below, GSMT's policy arguments do not compel the creation of federal common law in this context. This result may seem uncomfortable as applied in this situation, but "[t]he nature of ERISA preemption is not altered by the fact that some plaintiffs may be left without a meaningful remedy." *Muse*, 103 F.3d at 495.

Where specific provisions of ERISA reflect considered policy decisions, the ERISA policy to which the party enforcing ERISA resorts cannot support the creation of federal common law. In *Great-West Life and Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), the Supreme Court declined to address the argument that the deprivation of the proposed remedy would undermine the primary purpose of ERISA to enforce the terms of the plan at issue, explaining that "vague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Id.* at 220 (quoting *Mertens v. Hewett Associates*, 508 U.S. 248, 254 (1993)). *Knudson* and *Mertens* evince the Supreme Court's view of the primacy of ERISA's specific textual mandates over "vague notions of [the statute's] basic purpose." The specific provisions of ERISA provide the type of remedy GSMT seeks here, but do not authorize an employer like GSMT to pursue these remedies. Congress deliberately generated the list of parties permitted to bring suit to enforce ERISA, and that list is exclusive. *See Whitworth Bros.*, 794 F.2d at 225-28. Rather than being awkward, the gap in civil enforcement mechanisms available to employers in multiple-employer plans is intentional. GSMT cannot cling to ERISA's basic purposes of encouraging employers to provide pension plans and promoting the solvency of those plans to overcome what is a specific and intentional omission of employers of multiple-employer plans from ERISA.

Moreover, courts should only create federal common law where such an action would be "*essential* to the promotion of fundamental ERISA policies." *Tassinare v. Am. Nat'l Ins. Co.*, 32 F.3d 220, 225 (6th Cir. 1994) (emphasis added). GSMT cannot meet this high bar. It failed to provide any authority or argument establishing that denying employers in multiple-employer

plans the opportunity to bring suit under ERISA's civil enforcement statutes violates ERISA policies—it simply cites to cases recognizing those policies. Therefore, we find no reason to hold that the creation of the federal common law here is essential to the promotion of those policies.

When creating federal law, courts must be cautious that they are not rewriting legislation; rather, courts are only authorized to engage in interstitial federal lawmaking, "a basic responsibility of the federal courts" when Congress enacts complex and comprehensive legislation. *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 594 (1973). Moreover, courts must be careful to develop common law pursuant to the policies underlying the legislation at issue, without altering those policies. In permitting the expansion of federal common law to cover employer claims of breach of contract under multiple-employer plans, we would run afoul of these two precautions. First, we would seemingly be rewriting the civil enforcement mechanisms of 29 U.S.C. §§ 1132, 1370, 1451, to include "employer in a multiple-employer plan" as a party with standing to enforce the provisions of ERISA; second, ERISA policies that clearly aim to protect the rights of participants, beneficiaries, and fiduciaries, and employers under a multiemployer plan would be amended to protect an additional class of parties, thereby altering ERISA policy.

Ultimately, despite the persuasiveness of the policy arguments at issue, we affirm the district court's dismissal of GSMT's breach of contract claims. The relevant policies are those choices Congress made in drafting the civil enforcement schemes, and vague notions of ERISA's purposes are inadequate to overcome the ERISA provisions that specifically regulate civil enforcement mechanisms.

## 2. Fiduciary Claims

"ERISA explicitly authorizes suits against fiduciaries and plan administrators to remedy statutory violations, including breaches of fiduciary duty." *Bruch*, 489 U.S. at 110. GSMT responds that its fiduciary duty claims do not arise out of ERISA's statutory scheme regulating fiduciary conduct; the claims arise under the Agreement, which establishes that GSUSA, as GSMT's agent, is subject at all times to GSMT's instructions. According to GSMT, these are

contractual fiduciary duties, not ERISA fiduciary duties, and ERISA is silent on contractual fiduciary duties.

As a threshold matter, GSMT cannot drive a wedge between the Agreement and the Plan and recover as it wishes here. "[T]he written ERISA plan documents govern the rights and benefits of ERISA plan beneficiaries." *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010). Indeed, ERISA itself "is built around reliance on the face of written plan documents." *U.S. Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1548 (2013). Thus, we recognize the superiority of the written plan documents. *See Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997). Deprived of its status as a plan document, the Agreement would have no authority to impose additional obligations to an ERISA plan, and "federal courts may not apply common law theories to alter the express terms of written benefit plans." *Id.* Therefore, if the court divorced the Agreement from the Plan, such that the fiduciary duties provided in the Agreement are distinct from the Plan, then the fiduciary duty provisions of the Agreement would be subsidiary to and preempted by the ERISA fiduciary duties.

Even if the Agreement, segregated from the Plan, could impose additional duties upon the contracting parties, GSMT's request that we create federal common law for breach of contractual fiduciary duty claims cannot be granted. This is because we may only create federal common law where ERISA does not expressly address the issue at hand. *See Flacche*, 958 F.2d at 735. ERISA provides liability and a specific civil enforcement mechanism for breaches of fiduciary duties. 29 U.S.C. §§ 1104 ("Fiduciary duties"), 1109 ("Liability for breach of fiduciary duty"), 1132(a)(2) ("Civil enforcement"). Under ERISA, "the fiduciary obligations of plan administrators are to serve the interest of participants and beneficiaries and, specifically, to provide them with the benefits authorized by the plan." *Russell*, 473 U.S. at 142. The fiduciary obligations under ERISA cover those fiduciary obligations imposed by the Agreement—both concern GSUSA's duty to act for the principal's benefit as they relate to the Plan. GSMT thus seeks to recover for conduct that falls within specific provisions of ERISA, and any contention that ERISA is silent on the issue of fiduciary liability of the kind GSMT seeks to levy upon

GSUSA is meritless. *See Muse*, 103 F.3d at 495.[5] ERISA, by virtue of its preemptive authority, subsumes the fiduciary obligations imposed by the Agreement. *See Bond v. Gen. Motors Acceptance Corp.*, 142 F.3d 432, *5 (6th Cir. 1998) (table decision).

Moreover, as explained above in the contract claims context, ERISA's silence as to an employer's ability to hold a plan administrator liable for breach of fiduciary duties under a multiple-employer plan represents a deliberate Congressional decision to limit the parties that can pursue claims under ERISA. *See Cob Clearinghouse v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004) ("ERISA strictly limits standing. . . . And courts narrowly construe ERISA to permit only the parties specifically enumerated to bring suit."). It follows that courts will not create federal common law to fill the interstices of a statute that Congress deliberately left exposed. *Cf. Whitworth Brothers*, 794 F.2d at 233-35.

In light of the enforcement mechanism and remedies provided in ERISA concerning the breach of fiduciary duties and the proscription on authorizing alternative remedies under ERISA's civil enforcement scheme, we affirm the district court's refusal to create federal common law in this situation.

### D. State Statutory Claim

In the alternative, GSMT sought relief under Tenn. Code Ann. § 48-53-104(c), seeking a declaration that its grant of authority to GSUSA was *ultra vires*. This Fourth Count of the complaint incorporated by reference the preceding allegations, stated that this statute was in place at the time, provided the language of the statute, specified that ERISA does not preempt the statute, and explained, "While GSMT avers that the Plan Documents do not authorize GSUSA to subject GSMT to unlimited liability under the Plan . . . , in the event that the Court may otherwise determine, then GSMT avers that such a grant of authority to GSUSA was *ultra vires* and void, and that GSMT is entitled to a declaration to such effect."

The district court properly dismissed this count of the complaint for insufficient pleadings. GSMT presents no arguments or factual support in the complaint for the contention

---

[5]GSMT did not challenge the district court's conclusions as to its fiduciary duty claims for failing to recognize an awkward gap in ERISA or that extension of federal common law here would promote ERISA's fundamental policies.

that its grant of authority to GSUSA was *ultra vires* other than the bare assertion that it is. Trying to overcome this mistake now, GSMT argued that Tenn. Code Ann. § 48-62-102(g) required it to provide the Tennessee Attorney General 20 days' notice before disposing of all or substantially all of its property other than in the ordinary course of business. In failing to do so, GSMT's conveyance of so much authority to GSUSA was *ultra vires*. GSMT waited until its brief on appeal to make this argument,[6] but asserts that the district court should have made the "permissible inference [] that such notice was not given." GSMT argues this satisfies the pleading standards provided in *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). However, *Gazette* relies on the now defunct *Conley* standard for motions to dismiss. *See Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629-30 (6th Cir. 2009). Under the *Twombly/Iqbal* pleading standards, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown— that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.[7]

In essence, GSMT invites the court to infer from the fact that Tenn. Code Ann. § 48-62-102 existed at the time it submitted its complaint, that GSMT based its claim for declaratory judgment on its failure to comply with that statute, even though the complaint does not mention the statute or anything about providing notice to the Attorney General. GSMT presented no facts to support an inference of liability.

We do not consider arguments raised for the first time on appeal "unless the failure to consider the issue will result in a plain miscarriage of justice." *United States v. Ninety-Three Firearms*, 330 F.3d 414, 424 (6th Cir. 2003). Our consideration of GSMT's argument now would undermine the substance of the current pleading requirements and produce an unjust result for GSUSA, which had no means of mounting a defense to such a naked claim. Accordingly, we affirm the district court's dismissal of the state statutory claim.

---

[6]GSMT notes that the district court cited this Tennessee statute in its order. The district court's citation was the first time this statute appeared in this case, and the citation had no relevance to the *ultra vires* issue. The district court simply referred to the statute to compare its structure to Tenn. Code Ann. § 48-53-104, in order to determine whether GSMT had standing under Tenn. Code Ann. § 48-53-104. It did not discuss the content of the statute, let alone apply it to the present situation.

[7]That the district court quoted to *Gazette* does not revive the liberal *Conley* standard; the district court's reliance on *Gazette* was flawed, but its ultimate conclusion was not.

**CONCLUSION**

Because ERISA provides enforcement mechanisms for the claims GSMT asserts, we have no authority to create federal common law on those issues, even though those enforcement mechanisms are unavailable to GSMT as an employer in a multiple-employer plan.

GSMT further failed to properly plead its claim to relief under Tenn. Code Ann. § 48-53-104, alleging no facts to support its legal conclusion that its delegation of power to GSUSA was *ultra vires*. Moreover, the claim would fail under the broad swath of preemptive power ERISA enjoys.

AFFIRMED.